## EX PARTE JAMES THOMAS.

### February 23, 1881.

1. The St. Louis Court of Criminal Correction has no jurisdiction to try and convict for petit larceny upon proceedings commenced by a charge or complaint not signed, filed, adopted, or approved as an information by any public officer.

2. A paper signed and sworn to by a private citizen is not an information within the meaning of the Constitution of 1875, and a legislative enactment which permits its employment as the foundation of a criminal prosecution is, so far, void.

3. Sect. 32 of the act establishing the Court of Criminal Correction is valid in so far as it fixes the place of imprisonment, and void in so far as it fixes the term of imprisonment.

APPLICATION for *habeas corpus.*
*Demurrer overruled and writ issued.*
PRESLEY N. JONES, for the petitioner.
M. W. HOGAN, *contra.*

LEWIS, P. J., delivered the opinion of the court.

The petitioner is restrained of his liberty under a sentence, by the Court of Criminal Correction, of imprisonment in the city work-house for the term of one year, for the crime of petit larceny. He claims his release on the ground that

the court never acquired jurisdiction to try and convict him.

The proceedings were commenced by an information, so called, which was not signed or filed by any public officer, but was signed and sworn to by a private citizen.

Our State Constitution declares that " no person shall, for felony, be proceeded against criminally otherwise than by indictment; * * * in all other cases, offences shall be prosecuted criminally by indictment or information, as concurrent remedies." Art. II., sect. 12. It is contended that no mere affidavit, complaint, or other paper lodged by a private person, and not signed or given by some public officer lawfully authorized thereto, can be an *information* within the meaning of this constitutional provision.

The apparent authority for the paper here objected to may be found in the act of 1869 amendatory of the act establishing the St. Louis Court of Criminal Correction. Sess. Acts 1869, p. 197, sect. 19 ; Rev. Stats. 1514, sect. 19. After requiring that misdemeanors shall be presented to that court by information, the act provides : "An information in any such case may be lodged by the prosecuting attorney for said court, or by said assistant prosecuting attorney, or by any other person." Since the adoption of that law, several informations found under its authority and lodged by private persons have had the apparent sanction of our Supreme Court. *The State* v. *Berlin*, 42 Mo. 572 ; *The State* v. *Marshall*, 47 Mo. 379. But the decisions were rendered under the Constitution of 1865, and before the provision above quoted found a place in our organic law. The constitutional question here presented has never been decided by a court of appellate authority in Missouri.

In *The State* v. *Boogher*, 7 Mo. App. 573, this court sustained the information because, although lodged by a private person, it was approved and adopted by the prosecuting attorney. But the question whether, without such approval or adoption, it would have been sufficient under the Constitution, was not raised or considered in any way.

It is settled in America that where a State constitution uses any common-law technical term, without definition, such term must be understood and interpreted in its common-law meaning. It is of the first necessity, therefore, to determine whether the charge or complaint under which this petitioner has undergone imprisonment and trial was an information within the meaning of the common law. If it was not, then the legislative enactment which permitted its employment to such effect is in violation of the constitutional limitation first above quoted.

It is to be observed that this constitutional limitation is provided for the citizen's protection against a frequency of baseless, malicious, or frivolous prosecutions. If any citizen, acting upon his own untutored impressions of what constitutes a crime, may set in motion the powerful machinery of the law against another, who, while possibly guilty of some infraction of the moral law, has yet done nothing to subject him to civil penalty, there is no knowing who may not be harassed with accusations which the courts, after vain exposures and expenditures, must quash for insufficiency. Public policy seems to demand, in the strongest possible terms, that the judgment of a competent law-officer shall always determine in the first instance the propriety of a prosecution upon any serious charge. As to felonies, the Constitution clearly intends that no man shall be subjected to the ignominy and peril of a public prosecution unless his guilt shall seem so probable that a grand jury will be willing to charge it against him upon their oath. All this is implied in the use of the word "indictment." As to offences not felonies, it may be suggested that the provision concerning them is intended for nothing more than to dispense with the indictment. But the use of the expression "concurrent remedies" manifestly implies a restrictive reference to the information, as a known remedy, not less than to the indictment, each within its proper sphere. One or the other must be used in every case.

In the common law, an information is "a declaration of the charge or offence against any one at the suit of the king." Com. Dig., tit. "Information," A. "An information is, for the king, that which for a common person is called a declaration." Termes de la Ley, *voc.* "Information." It seems, from some of the earlier statutes, to have been considered that although there were "many good statutes and ordinances" for the punishment of "riots, unlawful assemblies, retainders, * * * the use of unlawful games, inordinate apparel, and many other great enormities and offences," yet such offences "might not, nor as yet may be conveniently punished by the due order of the law, except it were first found and presented by the verdict of twelve men thereto duly sworn, which, for the causes afore rehearsed, will not find nor present the truth," etc. It thus became necessary for the king himself, in his active care for the welfare and good order of his realm, or for some officer or person authorized to speak in his name, to give information to the proper tribunals of all such irregularities, to the end that punishment might overtake the offenders. 11 Hen. VII., c. 3. In practice, such informations were most usually filed by the attorney-general, as the law representative of the crown. But the courts also were representatives of his majesty, "the fountain of justice," and might, therefore, by leave given, empower any other officer, or even a private person, to speak in the king's name to the like effect. Thus, whether the information was "*ex officio*," requiring no leave from the court, or by private relation, which required a special leave, it was always considered, in theory at least, as an emanation from the sovereign executive authority. In the rules adopted for the granting or withholding of leave to file an information, the courts were extremely rigid in so discriminating as to preserve the insignia of kingly sanction.

Between a presentment of this character and a mere complaint or affidavit tendered by a subject or citizen, speaking

for himself only, there is a broad distinction. The one bears an unquestionable guaranty of good faith and sufficient cause, in the sleepless care for the common weal which the law always ascribes to the sovereign power. The other conveys a comparative irresponsibility, and a possibility, at least, of mere recklessness or malice. The personal complaint or affidavit can no more assume to be an information because it employs the expressions generally used in that instrument, than it can make itself an indictment by adopting the language customary with the grand juries. The words "and information makes," as in the charge here before us, can avail nothing to establish an authority which should be able to show a higher origin.

We have no doubt that the constitutional restriction to the information, as an alternative with the indictment, in prosecutions for minor offences, was intended to import into our criminal jurisprudence all the cautionary implications against reckless or ill-advised accusations that attached to the information under the common law and early British statutes. It must come from the State in its sovereign capacity, through an officer or court authorized to speak in that behalf. The Court of Criminal Correction being a creation of the General Assembly, it may well be that, as the statute now stands, there is no power conferred on that court to grant leave to a private person for the filing of an information. But this is a matter not pertinent to our present inquiry. It is at least certain, in our view, that the so-called information, filed by a private person, without leave from any source, and upon which the petitioner was arrested and tried, was void by the terms of the Constitution, notwithstanding the attempted legislative authorization in the act which established the court. The petitioner is, therefore, entitled to his discharge from an imprisonment which has no better warrant of law.

A point is raised for the petitioner as to the power of the Court of Criminal Correction to sentence a prisoner to the work-house for the offence of petit larceny. There is no

need for a decision of that question in the present case. We may remark, however, that we see no reason to recede from the views held by us in the *Jilz Case*, 3 Mo. App. 243. We consider sect. 32 of the act establishing the Court of Criminal Correction valid in so far as it prescribes the place of confinement, but unconstitutional and void only in so far as it fixes the term of imprisonment.

The demurrer filed on the part of the State against the present petition is overruled, and the writ will be issued accordingly. All the judges concur.