STATE OF MISSOURI, Respondent, *v.* JOHN M. WONDERLY, Appellant.

### May 5, 1885.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—CONCURRENT REMEDIES.— A

criminal prosecution by information before a justice of the peace is a remedy concurrent with an indictment returned in a court of record.

2. CRIMINAL LAW—WIFE ABANDONMENT—EVIDENCE.—The record of a divorce proceeding by the husband against the wife is competent, in a prosecution for the abandonment of the wife, as tending to show the motives actuating the husband in abandoning his wife.

3. —— PRACTICE—INSTRUCTIONS.—In such an action, evidence tending to show that the husband entered into the marriage for the purpose of avoiding a criminal prosecution for seduction and with the intention of abandoning his wife after the marriage, is improper unless its effect is limited, by an instruction, to the issue on trial.

APPEAL from the Knox County Circuit Court, TURNER, J.

*Reversed and remanded.*

W. C. HOLLISTER, for the appellant.

G. L. BALTHROPE, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a prosecution, commenced before a justice of the peace, for abandonment of a wife and child, under Rev. Stat., sect. 1273. The affidavit of a private citizen was first filed charging the offense, and on this the justice issued a warrant and caused the defendant to be brought before him. Upon this appearance, the prosecuting attorney for the county filed a formal information whereupon the prisoner was tried before a jury and found guilty. He appealed to the circuit court, wherein the prosecuting attorney, on leave, filed an amended information. There was another jury trial, which resulted in the defendant's conviction and an assessment of his punishment at a fine of four hundred dollars, with imprisonment in the county jail for the term of twelve months.

The affidavit first filed conferred no jurisdiction on the justice, as was decided by this court on constitutional grounds in *Ex. Parte Thomas*, 10 Mo. App. 24. But the defendant, while in custody, pleaded "not guilty" to the information filed by the proper officer and this amounted to a waiver of any irregularity in his arrest. It is objected, however, that there was no jurisdiction,

because article eleven, section twelve of the state constitution prescribes that all offenses other than felonies "shall be prosecuted criminally by indictment or information as concurrent remedies." From this it is argued that, since an indictment must originate with a grand jury and in a court of record, an information cannot be "concurrent" therewith, when not pursued as a remedy also in a court of record. To state the position in other words, a justice has no jurisdiction to try an indictment, and therefore he cannot have jurisdiction to try an information, which is constitutionally concurrent therewith. The argument is frivolous. The two remedies are concurrent, because employed or "running together" to the same end—the punishment of crimes other than felonies. To say that they cannot be concurrent unless originating in the same court or in the same sort of courts, is about as reasonable as to say that two animals cannot be found "running together," if not born of the same mother. The offense charged in this case is a misdemeanor, and jurisdiction of it by information is clearly conferred on justices of the peace "except in cities having exclusive jurisdiction in criminal cases," by Revised Statutes, sections. 1760, 1762, 2024. The amended information filed by the prosecuting attorney was authorized by section 2027.

The testimony tended to show that the defendant and the prosecutrix were married on September 20, 1883, and that a child was born to them in a week after the marriage. The defendant admitted on the trial that this child was his. The first proper information was filed on November 20, 1884, and charged a continuous abandonment from December 1, 1883, up to the date of the filing. The proofs tended generally to establish an abandonment to the extent charged, and the defendant virtually admitted it by his conduct and declarations, except that, during the trial and a short time before it, he expressed a willingness to return to his wife and take care of her to the best of his ability. Both offers were rejected by the wife, on the ground that he had instituted divorce pro-

ceedings against her in which he falsely charged her with improper intimacy with other men prior to her marriage, and that her child was the offspring of one of them. The record of the divorce suit was put in evidence, showing that it was commenced on November 11, 1884, and dismissed by the plaintiff on the 29th of the same month. The admission of this record against the defendant's objections is assigned for error. We do not perceive that the evidence was improperly admitted. The petition was filed before the commencement of this prosecution, and within the period identified with the commission of the offense. It was a not unfair method of showing the *animus* and purposes of the defendant, as touching the matter of the charge.

A witness was allowed to testify, against the defendant's objection, that, a short time before his marriage, the defendant called on him for information about the penal consequences of seduction. The witness "looked up the law and read it to him," whereupon the defendant said "they could make him marry her, but they could not make him live with her." The witness added: "This was the time they were after the defendant to arrest him for seducing his wife under promise of marriage." The general purpose of this testimony was, doubtless by coupling the previous declaration of intention with the act subsequently committed, to strengthen the proofs of the defendant's commission of a crime. Such a purpose may be legitimate in a large majority of criminal cases. It is particularly so when the prosecution must depend on circumstantial evidence, and a question arises about identifying the prisoner with the criminal act which is proved to have been perpetrated by some one. But in the present case there was not the least need for any such testimony. The abandonment stood admitted or abundantly proved by direct testimony, and there could be no sort of question about the defendant's connection with the fact. If the defendant's declarations fairly meant that he intended, without good cause, to desert a wife and child, and to refuse to maintain or provide for them,

they were made at a time when it was impossible for him to do those acts, since he had neither wife nor child and might never have them. There is a remoteness about this connection which seems hardly to fulfil the logic of performance, as the sequence of a threat. But be this as it may, it is evident that the most prominent tendency and effect of the testimony were to present the defendant to the execrations of the jury, as a seducer under promise of marriage, before it was possible for him to commit the crime for which he was on trial. They were thus given a motive to punish him for two crimes, one of which was not included in the charge submitted to their consideration. The result is apparent in the verdict. It was shown that the wife had a home at her father's, where she was always comfortably provided for and preferred to remain ; so that no element of destitution or family suffering occasioned by the defendant's neglect was apparent in the case. And yet the jury assessed his punishment at the longest term of imprisonment permitted by the law, with a fine of four hundred dollars superadded. So much of the testimony as related to the prosecution for seduction was not admissible on any grounds. It was a matter wholly distinct from, and independent of any connection with, the present charge. But if we regard this part of the story as having dropped from the witness without design on the part of the prosecution, and if we concede that the defendant's declaration of his intentions was strictly admissible on technical grounds, still, from the intimate connection between the two parts of the account given by the witness it became a duty of the court to warn the jury by instruction against the unfair tendencies of the whole, taken together, against the defendant's rights. The court gave, by request of the defendant, an instruction so warning the jury, with regard to the evidence of the divorce suit. But the expressions therein used were not likely to be understood by the jury as aplying equally to the testimony here criticized.

Considering that the extreme punishment assessed against the defendant was apparently only the natural

result of a prejudiced feeling excited in the jury by the extraneous matter improperly brought to their attention, and that no proper precautions were employed to counteract its evil tendency, we are of opinion that the defendant has not had in this case a fair hearing and adjudication of his rights under the law ; and that the punishment adjudged is excessive, as compared with what it should have been, in the due course of a just and impartial procedure.     The judgment is therefore reversed and the cause remanded.    Judge Rombauer concurs.    Judge Thompson dissents.