## RUTHERFORD vs. COXE.

Where the wife lives apart from her husband, and such fact is known, the husband is not liable for articles furnished her, unless it appear that he consented to the separation, or had by his own misconduct induced the separation.

## ERROR to St. Louis Court of Common Pleas.

### *Statement of the Case.*

This was an action of assumpsit brought by Rutherford, to recover of the defendant, Coxe, the

*Rutherford* vs. *Coxe.*

amount of a bill of goods furnished to his wife. A great many special pleas were filed, all of which were subsequently withdrawn, and the parties went to trial on the general issue.

The bill of particulars presented by the plaintiff, exhibited a running account, commencing January 25th, and ending Dec. 24, 1844. It consisted of various articles used in making up a lady's wardrobe, and the sum total charged was $392 35. Of this sum $90 82 was charged prior to April 1, 1844; $255 85 between the 1st of April and 5th of October; and $45 65 subsequent to 5th October.

The plaintiff called Wm. T. Whiting, who proved that Rutherford was a dry-goods merchant, who had been in the habit of furnishing goods to Mrs. Coxe for some years; that the goods had been furnished to Mrs. Coxe on credit, and the bills paid by her husband, the defendant, without objection. This course of dealing had existed all the time witness had been a clerk in Rutherford's store, a period of five years. Witness proved the purchase of the goods mentioned in the particular, by Mrs. Coxe; that the prices charged were fair and customary; that the goods were such as were usually taken up by ladies moving in the same sphere of life with Mrs. Coxe; and that the bill, though somewhat larger, was similar to those previously taken up by Mrs. Coxe, and paid without objection by the defendant. Witness further testified, that all the articles charged were delivered to Mrs. Coxe, or sent by the boy who acted as messenger, according to Mrs. Coxe's directions.

Plaintiff then called Addison Hardcastle, who testified that he was messenger in Rutherford's store, and delivered parcels to customers as he was directed. He delivered Mrs. Coxe's goods at Mr. Mitchell's, and supposed Mr. Coxe was then living with his wife. Here the plaintiff rested.

The defendant then called James T. Swearingen, a relation of Mr. & Mrs. Coxe's, who stated in substance, that Mrs. Coxe left her husband and went to reside with her friends sometime in the spring of 1844; this was against Mr. Coxe's wishes; he provided amply for her while she lived with him; she applied for a divorce, but did not succeed; Mr. Coxe kept house sometime after his wife left him, and then went to the Planters' House. Mrs. Coxe dealt at other stores than Rutherford's, after the separation; the bills amounted to $1100. Mrs. Coxe was well provided with a wardrobe when she left her husband; witness knows of no treatment on the part of the defendant to justify his wife leaving him. On cross-examination witness said that many efforts were made on the part of friends, during the summer of 1844, to bring about a reconciliation; the fact of the separation was generally talked about; did not know that the other bills were paid, further than that he saw them in defendant's possession; knew of no public notice ever being given by Mr. Coxe not to trust his wife.

Defendant then read a letter from plaintiff, *without date,* to the effect that Mrs. Coxe had called on that day to purchase goods, and had been informed that he (Mr. Coxe) was displeased at the bill she had already made, and had requested that she might not be trusted more; that Mrs. Coxe said she could get her goods any where else, and as the writer supposed that he (Mr. Coxe) would prefer her taking up her goods at his store to her going elsewhere, he had sold her a bill which he trusted would meet with no objection, &c. Defendant then rested.

The plaintiff then in reply, read the affidavit of the defendant, made on the occasion of an application in chancery, by Mrs. Coxe, for alimony. The affidavit stated in substance that the wife had abandoned him in March, 1844, without just cause; that between that time and the 15th day of October, she had run up bills at shopkeepers on his credit to the amount of about $1100, and he refers to bills produced; that at the time of the abandonment she had proposed, and he had agreed to relinquish to her all the property acquired by her, amounting to $40,000, (forty thousand dollars,) yielding an annual income of $1200; that she afterwards refused these terms; that his own property amounted to no more than $25,000, yielding a revenue of about $350. The affidavit then speaks of some debts not deemed material in this case. The affidavit states that she had contracted a debt at Louisville for about $200, and that another bill had come in from Rutherford amounting to $45 65, contracted since the 15th October. The affidavit also states that he had always been ready and willing to make the forementioned adjustment as to property, but it had been prevented by Mrs. Coxe. This affidavit was sworn 28th January, 1845.

The plaintiff then called Judge Krum, who proved that the bill of Rutherford was used by the counsel of Mr. Coxe, before him, as an argument against the allowance of alimony (Coxe being himself present at the time)—that alimony was resisted on the ground that it rested in the discretion of the court, and that she was well provided at the time of the separation, and had since contracted liabilities to the amount of $1100.

Plaintiff then produced Mrs. Coxe's bill for divorce, and the defendant's answer, and read from the answer an extract, to the effect that Mrs. Coxe "was responsible for dragging the unhappy affair into court, by breaking the terms of an amicable separation agreed upon between them;"—and another extract, to the effect, that "to accomplish a private and peaceable adjustment of property, defendant agreed to convey to her separate use, all the property acquired by the marriage;" and she consented to this, and afterwards refused.

Plaintiff then read a letter from Mr. Wright, the attorney of defendant, dated 28th Jan'y, 1845, (the very day the affidavit was sworn,) requesting plaintiff to send the amount of Mrs. Coxe's account contracted since the date of the former bill sent in on the 5th October. Plaintiff here closed.

Defendant then in rebuttal, called U. Wright, Esq., who testified that in the argument before Judge Krum, he did not admit Coxe's liability to pay Rutherford's claim, that his object in using the affidavit was to repel the averments in the bill, that Mrs. Coxe had been dragged into court, and that she had got a *few* articles since the separation, when in fact she had got a large quantity. On cross-examination, he said he thought it likely that at the time when he wrote the billet to Rutherford, he had a bill from his store up to Oct. 5th. Mr. Wright was requested to read from the bill in chancery the averment he intended to repel by the bills; he read as follows: "In the interval, she has received nothing from Mr. Coxe, or by his means, except that she has purchased some necessary articles of dress, and directed them to be charged to his account."

The defendant then read the whole of his answer in chancery. It consists of a denial of the charges of the bill, and contains the admission that the marriage was unhappy—had caused him much secret suffering—had failed of its ends, and he did not desire its continuance, and he had no objection to a divorce, &c.

The defendant here closed, and no further evidence was given. The court then gave these instructions to the jury:

1. If the jury find from the evidence, that at the time the goods were obtained by defendant's wife, she was living separate and apart from her husband, having abandoned him without just cause, they will find for defendant, unless they find an assent on his part to the purchase made by her.

2. If the jury find from the evidence, that the goods were furnished to the wife of the defendant, at a time when she lived separate from him, that she had quitted him against his will, and that the plaintiff knew of the separation, or that the separation was so notorious that he ought to have known it, they will find for the defendant.

3. If the jury find from the evidence, that the defendant and wife separated by mutual consent, he was bound to furnish her necessaries until he made her a sufficient allowance to maintain her in a manner suitable to his and her position in society.

4. If the jury find that defendant's wife left him against his will, and that she has never offered to return to him, he is not liable for necessaries, unless furnished in ignorance of the separation, and when it was too recent to be generally known.

The plaintiff excepted to these instructions.

The plaintiff then moved for the following instructions:

1. If the separation between the husband and wife was voluntary, the husband is liable for necessaries suitable to her rank and station in life, furnished to the wife during such voluntary separation.

2. The facts stated in the affidavit, of a treaty between the husband and wife for a separate allowance, and of an offer by the husband to settle upon her a separate estate, are evidence that the separation was voluntary.

3. If the jury find that a bill of the goods purchased had been presented to the defendant. charging him as a debtor for the same, and the defendant suffered the bill to lie by him, without giving notice of any objection to the plaintiff, this is evidence tending to prove defendant's assent to the purchase.

4. If the jury find that the bill of goods sued for was presented by the defendant to the circuit court, as a debt due by him, this is evidence of his assent under the issue.

5. If the jury find that the bill of goods sued for was used by the defendant before the circuit court, as evidence to prove that defendant's wife was amply provided with necessary clothing, and thereby diminish the burthen that would fall on defendant for his wife's support, this is evidence tending to prove the issue on the part of the plaintiff.

6. The jury are instructed, that if the separation between the defendant and his wife, was voluntary, the defendant is liable for necessaries furnished to her, in the same manner as if the parties were living together; nor will it make any difference in this respect, that the wife originally deserted the husband against his will, if he afterwards consented to her living apart from him.

The court refused all the foregoing instructions, and plaintiff excepted.

The jury retired from the bar, and were deliberating what verdict to give, when the court ordered them to be brought back to the bar, and on its own motion, gave this instruction:

If the jury believe from the evidence, that the defendant's wife, to whom the goods were sold, ordered them to be sent to Mr. Mitchell's house, while the defendant continued to occupy his own house, or to board at the Planters' House, this was a circumstance sufficient to notify the plaintiff of the separation.

After this instruction, (to which the plaintiff excepted,) the jury gave a verdict for the plaintiff, allowing as damages only $94 13; disallowing, as will appear from the particulars, all the account accruing after the separation.

The plaintiff made a motion for new trial, which was overruled, and an exception was saved.

### R. M. FIELD & CARROLL, *for Plaintiff in error.*

The general grounds on which the plaintiff below sought to recover, and which he relies on in this Court, may be thus stated :

*First.* That the defendant was liable *as husband,* the law imposing upon him the duty of paying for necessaries furnished to the wife.

The defendant's answer is, that the necessaries were furnished after the wife had deserted the husband, and while she was living in a state of separation.

To this, the plaintiff replies, that although the original desertion might have been against the will of the defendant, yet he afterwards assented to her living apart from him, and so the separation was voluntary.

The facts on which the plaintiff relies as proving the defendant's assent to the separation, are these :

1. He neither invited her to return nor took any steps to reclaim her. Reed vs. Moore, 5 Car. & Payne, 200.

2. At the time of the separation, a division of the property was actually agreed on between the parties.

3. Defendant declares on oath that he had always been ready and willing to make the adjustment agreed on, but that the wife refused.

4. Defendant also declares on oath that the wife was responsible for dragging the unhappy affair into court by breaking the terms of an *amicable separation agreed upon between them.*

5. Defendant again declared that, to accomplish a private and peaceable adjustment of property, he had agreed to convey to her separate use all the property he had acquired by the marriage— that the wife agreed to this, and afterwards retracted.

6. Defendant, in his answer, further declares that the marriage had been unhappy—had caused him much secret suffering—had failed of its ends—he did not desire its continuance, and had no objection to a divorce.

*Second.* That the defendant is liable as having given the wife authority to take up goods at the plaintiff's store on his credit. This authority is implied from the course of dealing, extending through a period of more than five years, according to the testimony of Whiting. 2 Kent's Com., 614; Story's Agency, sec. 64.

The defendant answers, that the authority was revoked by the separation.

The plaintiff replies to this, that he had no notice of the separation. No actual notice was proved. No notice was given in the gazettes. The plaintiff's clerks declared that they did not know of the separation. And the only proof of the *notoriety* of which the Judge speaks, in his instructions, is the evidence of Swearingen, a relative, that "it was generally talked about."

The plaintiff insists, that as there had been a long course of previous dealing at his store by the wife under the authority of the husband, he was entitled to actual notice of the determination of the authority. Story, speaking of revocation of agency, says, "As to the agent, it takes effect from the time when the revocation is made known to him, and as to third persons, when it is made known to them, and not before. Until the revocation is made known, it is inoperative."— Story on Agency, sec 470.

The rule in cases of partnership illustrates the same principle. Publication of dissolution in the gazettes, has always been holden as insufficient in regard to all having dealings with the firm, and actual notice must be proved. Story on Part., sec. 161.

If a general agency has been vested in the wife by reason of a course of dealing on credit with his assent, this authority may continue after separation until notice be given to the tradesman.

*Third.* The conduct of the defendant in relation to the account, furnished sufficient evidence of his assent to it; in other words he adopted the debt.

1. The account up to the 5th October was furnished to him, and he did not question the authority of the wife to take up the goods on his credit, but merely expressed his chagrin at the amount of the bill.

2. He received immediate notice from the plaintiff that the goods furnished after 5th October had been supplied to the wife, and he made no objection.

3. He applied for the account subsequent to the 5th October without giving the slightest intimation to the plaintiff that he should resist its payment.

4. He presented the whole account to the Circuit Court, on the application for alimony, as a debt for which he was responsible. A careful examination of the evidence will show that the account was treated as a subsisting debt.

The plaintiff insists that here was a complete ratification of the act of the wife in taking up the goods on his credit. 2 Kent's Com., 615.

Under the instructions given and refused by the court below, not one of the above grounds was presented to the jury.

I. The first ground was covered by the 1st, 2nd and 6th instructions asked by the plaintiff.— But the court refused these, and in lieu of them, gave that marked 3rd, which was calculated to mislead the jury in this, that it pointed their attention merely to the original act of separation.— The refusal of the plaintiff's 6th instruction was equivalent to telling the jury that if the wife in the first instance deserted the husband against his will, no subsequent agreement on his part to her remaining away would make the separation voluntary. That this was really the idea of the court, may be also gathered from the 4th instruction given by the court.

II. The second ground assumed by the plaintiff was cut off by the second and fourth instructions given by the court. In the second instruction, the jury are told that the plaintiff had forfeited his right to recover "if the separation was so notorious *that he ought to have known it.*" In the fourth, the plaintiff was to lose his right if the separation "was generally known."

III. The third ground taken by the plaintiff would have been fairly presented to the jury by

giving the plaintiff's third, fourth and fifth instructions. These, however, were all refused, and the jury must have understood that the assent spoken of in the court's first instruction could not be manifested by any of the evidence pointed at in the plaintiff's instructions.

IV. The instruction given after the retirement of the jury, was erroneous:—

1. As to time and manner. The jury had been deliberating a long time; they were evidently embarrassed; the court ordered them to return, and gave a single instruction on a single point.— It was in effect telling them that *that* would solve their difficulty, and the attention of the jury would naturally be withdrawn from every other part of the case.

2. As to the matter of the instruction:

*a.* It undertakes to pronounce on the *sufficiency* of the evidence, which was the business of the jury and not of the Judge.

*b.* It assumes that when the goods were left at Mitchell's, the plaintiff knew that the defendant was living in his own house or boarding at the Planters' House. No such proof was before the court or jury.

*c.* It magnifies a trivial circumstance into much greater importance than a fair minded jury would ever have given to it.

NAPTON, J., *delivered the opinion of the Court.*

This suit was brought to recover the amount of a bill of goods furnished to the wife of the defendant, whilst she lived separate and apart from her husband. It appeared that the goods were of a similar character to such as had been furnished Mrs. Coxe previous to her separation, and for which Mr. Coxe had paid without objection. There was evidence to show that Mrs. Coxe had left her husband without cause, and that the separation was notorious through St. Louis. Propositions for a compromise or amicable separation and division of property had passed, but had not resulted in any definite arrangement. Mrs. Coxe sued for a divorce, but did not succeed. Upon that trial, Mr. Coxe had given in evidence bills contracted by his wife to the amount of $1,100, or thereabouts, and among these was the one now sued for. The only question is, whether, upon the facts just stated, the plaintiff was entitled to recover. The Court of Common Pleas held that, if the jury found the facts to be as stated, the plaintiff could not recover, and in this opinion we concur.

The liability of the husband for necessaries furnished the wife, is based upon the fact of cohabitation. When that ceases, the tradesman deals with the wife at his peril. If the separation is involuntary on the part of the wife, or brought about by the misconduct of the husband, the latter is clearly liable; but if the wife leaves the husband without just cause, he is not liable. This doctrine is briefly and forcibly expressed by Mr. Justice Platt, in McCutchen vs. McGahay, (11 J. R., 282.)— "The duties of the wife, while cohabiting with the husband, form the

consideration of his liability for her necessaries. He is bound to provide for her *in his family;* and while he is guilty of no cruelty towards her, and is willing to provide her a home and all necessaries *there,* he is not bound to furnish them elsewhere. All persons supplying the necessaries of a married woman, separate from her husband, are bound to make enquiry as to the cause and circumstances of the separation, or they give credit at their peril."

The instructions of the Court of Common Pleas are understood to assert the same principle, leaving the jury to find the facts. There was certainly ample evidence to satisfy a jury that the plaintiff knew of the separation of the defendant and his wife. The general notoriety of the occurrence throughout the city—the plaintiff's letter to Mr. Coxe, written after the separation, and the direction of Mrs. Coxe to send the goods to the residence of her brother-in-law, were sufficient circumstances to warrant the inference that the plaintiff was fully aware of the relations of the parties. Nor was there any satisfactory evidence that Mr. Coxe assented to the separation unconditionally. There was no proof that Mrs. Coxe ever offered to return to her husband, and the propositions made by Mr. Coxe for an amicable separation were merely by way of compromise, and would not change his liabilities, unless they had been acceded to by Mrs. Coxe.

We do not see how the conduct of the divorce suit between Mr. and Mrs. Coxe, either by Mr. Coxe or his counsel, had much tendency to explain his legal liability to the plaintiff in this suit. It seemed that upon this trial, the account of the plaintiff, among others, was produced for some purpose. Perhaps Mr. Coxe at that time considered himself liable to pay the account, or, whether liable of not, he may have determined to pay it. This determination, however, unless communicated to the plaintiff, does not change his legal liabilities. If liable at all, he was liable when the bills were contracted, or by some subsequent assumption to pay them. Could the introduction of these bills in evidence in a trial between him and his wife have the force of an assumpsit to the plaintiff? The evidence, at all events, was permitted by the court to go to the jury, and it was for them to draw such inferences from it and the other concomitant facts as they thought proper.

Upon the whole, we think the instructions given contained the law applicable to the case, and the verdict of the jury amply sustained by the evidence.

Judgment affirmed.