STATE OF MISSOURI, Respondent, v. C. E. GREENUP, Appellant.

St. Louis Court of Appeals, April 10, 1888.

1.   CRIMINAL LAW—WIFE ABANDONMENT.—In order to a conviction for wife abandonment, the state must prove a criminal intent on the part of the defendant to abandon his wife without cause, and a refusal to provide for her. Evidence of an abandonment and refusal to provide are not sufficient, without a satisfactory showing that there was no cause.

2. —— —— INSTRUCTION WITHOUT EVIDENCE.—It is error to instruct the jury that requests or persuasions employed by the defendant to get his wife to come to him will constitute no defence, if they believe that such requests or persuasions were a mere artifice to shield himself, and were not used in good faith, when there was no evidence of any artifice, or of any covering of a secret purpose on the part of the defendant.

APPEAL from the Lawrence Circuit Court, HON. W. D. HUBBARD, Judge.

*Reversed, and defendant discharged.*

CHAS. P. & J. D. JOHNSON and THOMAS & HACKNEY, for the appellant: To constitute the offence of which appellant is charged, two elements are essential: the criminal intent of abandonment without cause, and the failure and refusal to provide for the wife. These two elements must concur, otherwise the offence is not complete. *State v. Fuchs*, 17 Mo. App. 461; *State v. White*, 45 Mo. 512. The husband has the right to establish his domicile anywhere that his business or health may require, and it is the duty of the wife to follow him and live wherever he chooses to live. If she does not she deserts him. *Messenger v. Messenger*, 56 Mo. 329; *Hair v. Hair*, 10 Rich. (S. C.) Eq. 163; *Walker v. Laighton*, 11 Fost. (N. H.) 111; *Hardenburgh v. Hardenburgh*, 14 Cal. 654; *Kennedy v. Kennedy*, 87 Ill. 250; *Babbitt v. Babbitt*, 67 Ill. 277; *Hunt v. Hunt*, 29 N. J. Eq. 96; *Mayer v. Mayer*, 30 N. J. Eq. 411; *Cutler v. Cutler*, 2 Brewst. (Penn.) 511. After the refusal of his wife to live with him, defendant was not liable for her support elsewhere. *Rutherford v. Cox*, 11 Mo. 353; *McCutchins v. McGahay*, 11 Johns. 282.

W. B. SKINNER, for the respondent.

THOMPSON, J., delivered the opinion of the court.

The defendant was prosecuted by indictment for abandoning his wife without good cause and failing, neglecting, and refusing to provide for her, under section

1273, of the Revised Statutes, and was convicted and adjudged to pay a fine of two hundred and fifty dollars. The evidence for the state tended to show that the defendant was married to Jennie Jones, his present wife, on the first of October, 1885. She was his third wife. He had two children by his former wives, the elder of them a girl about sixteen years old. They lived together at Mount Vernon in Lawrence county until the fifth of April, 1886, when he closed the house, separated his household goods from her effects, took his children and went to Peirce City to live. He left fifty dollars to her credit in bank, and paid her board for five weeks, when he refused to pay it any longer. She was then *enceinte*, was afterwards delivered of a child, and thereafter returned to her former occupation, which was that of a school teacher, in order to make a living. That he abandoned her purposely the evidence for the state fully shows. But it is entirely blind as to the reason for his doing so. Indeed, both parties seem to have purposely kept back all evidence which would show his motives for abandoning her, except that a series of letters written by him to her after he had taken up his residence at Peirce City were put in evidence. Some of them were called out by the defendant on his cross-examination of her as a witness; others were put in evidence by the state in rebuttal; and still another was put in evidence by him at the close of the whole case. No less than five of these letters solicited her to come to him and live with him at Peirce City, representing that he was able to provide for her and promising good treatment in case of her good behavior. We see no evidence in the record tending to show that she would not have been well provided for and kindly treated if she had complied with these repeated requests. She refused to comply with them. In several of these letters he gave directions about her coming and bringing her things to Peirce City. He went so far as to send a mutual acquaintance to bring her things and her. She gave as a reason for not coming with him that she was ill at the

time—in such delicate health that she was not able to endure the journey; but finally she told him, according to his testimony (given for the defence), "to make a long story short, Mr. Burrows, I do not think I will go to Peirce City at all." And, pressed on cross-examination, she gave this reason: "Now, if you must know my reasons, I will tell you. I was waiting for some promise from Mr. Greenup. I wanted some promise that he would treat me as a wife; that he would not pout; that he would consider me a virtuous woman; that he would treat me right." Another witness for the state who knew both the husband and the wife, testified: "I talked with Mr. and Mrs. Greenup and they both said that there was no chance of a reconciliation, and she did not state on what account." As already stated, there was no evidence as to his manner of treating her. We only catch glimpses in the series of letters from him to her which have been put in evidence, that reports were out affecting her character, which may possibly have been credited by him. In one of these letters he upbraids her for taking into her confidence one of the men whom he in substance charges with having circulated such reports. It might be added in this connection that the defendant's daughter testified that, in a letter from her to him, she demanded as the price to go and live with him at Peirce City that he would kill a certain person named, — a statement which she denies. The jury had not the advantage of her letters to him to which his several letters were replies, so as to be able to gather anything concerning the value of the charges and criminations made in these letters of his to her. Only one side of the correspondence was put in evidence. The last letter which solicited her to come and live with him at Peirce City was dated May 1. On May 6 he wrote her a letter full of complaints at her conduct and announcing that, in consequence of the course she was pursuing, he would not contribute anything further for her support; and it seems that, on May 9, he refused to honor her bills for board.

This is a criminal action. The state, and not the wife, is the complaining party. In this action the presumption of innocence of the misdemeanor charged attends the defendant at every stage of the trial, and, in order to sustain a conviction, the state must produce evidence of his guilt which satisfies the jury of it beyond a reasonable doubt. Two elements are essential to constitute this offence : The criminal intent to abandon without cause, and the failure and refusal to provide for the wife. *State v. Fuchs*, 17 Mo. App. 461. In order to make out its case, the state must show, beyond a reasonable doubt, the existence of both of these elements. Evidence of a mere abandonment and a subsequent failure and refusal of support does not prove the criminal offence denounced by the statute. The state must further show that the defendant had not "good cause" for the abandonment. The state must show this, although it involves the necessity of proving a negative ; for the rule in this state even in civil cases is, that where the plaintiff grounds his right of action in a negative averment, and the proof of the affirmative is not peculiarly within the knowledge and power of the defendant, the establishment of the negative is an essential element of the plaintiff's case. *State v. Schar*, 50 Mo. 393. In this case the *absence* of "good cause" for the abandonment, if such existed, was not a fact peculiarly within the knowledge of the defendant, and, therefore, the state was bound to prove it in order to sustain a conviction of a criminal charge. Where proof of the negative is not from the nature of the case impossible, the general rule is, that the party sustaining the burden of proof must give some evidence in support of his negative averment, in order to shift the burden of proof and require an explanation from the other party. *Halifax's case*, Buller N. P. 298 ; *Rex v. Combs*, Comb. 57 ; *Monke v. Butler*, 1 Rolle Rep. 83 ; *Williams v. East India Company*, 3 East, 192. In this record we discover no such evidence in support of the averment of the indictment that the abandonment was "without any

good cause whatever." There is not even, on the part of the wife, testifying as a witness for the state, the general evidence which is required in proceedings for divorce instituted by a wife, and which, it is assumed, is required in an action by an abandoned wife against the husband for maintenance, that she, while cohabiting with him, demeaned herself properly as his wife. In short, the record is blind as to the conduct of the spouses during the period of cohabitation, the reasons which led to their estrangement, and the cause, if any, which the defendant had for separating from her and going to Peirce City, and the cause, if any, which she had for refusing to follow him and live with him there. On such evidence she could neither maintain an action for a divorce nor for support and maintenance. Much less will it support a prosecution by the state for a criminal misdemeanor. The merits of this unhappy separation lie, so far as this record is concerned, entirely within the domain of conjecture. For aught that the record shows, the husband may have had good cause for the abandonment, or it may have been causeless, wanton, and cruel; and the wife may have had good cause for refusing to follow him to Peirce City, or it may have been unkind, capricious, and undutiful.

The record shows that all of these repeated solicitations of the defendant to the wife to return to him were made before the means of living which he had left with her had been exhausted. Had he persisted in his separation from her without soliciting her to return to him and without providing her with additional means, the evidence would present a stronger appearance of a criminal abandonment and refusal of support; though, the cause of the abandonment remaining undisclosed, it would still be insufficient to sustain a conviction. But when he solicited her to return to him, promising good treatment, and even sent a messenger to bring her, he then put himself right before the law even if wrong before, and her refusal to return to him, not adequately

explained, puts her, and not him, in the wrong. A husband, it has been well said, is bound to provide for his wife in his family; and while he is guilty of no cruelty to her, and is willing to provide for her a home and all necessaries there, he is not bound to furnish them elsewhere. *McCutchen v. McGahry*, 11 Johns. (N. Y.) 282, per Platte, J.; *Rutherford v. Coxe*, 11 Mo. 353, per Napton, J. In a later case Judge Napton, speaking for the Supreme Court, said: "The question is one of desertion; and we hold that the wife is bound to follow the fortunes of her husband, and to live where he chooses to live, and in the style and manner which he may adopt." *Messenger v. Messenger*, 56 Mo. 337. These principles were recognized by the learned judge who presided at the trial, and were sufficiently expounded to the jury by the instructions. As the evidence exhibited the state of facts upon which they were predicated, there was nothing, it should seem, for the jury to do save to return a verdict of not guilty.

But the good effect of these instructions seems to have been destroyed by the giving of the following instruction at the request of the state:

"The court further instructs the jury that, if you believe from the evidence that, at the time the defendant left his wife, he intended without good cause to abandon and desert her, then any requests or persuasions he may have employed to get her to come to him at Peirce City (if you find from the evidence he used any requests or persuasions) constitute no defence in this cause, if you find such requests and persuasions were a mere artifice used to shield himself, and not used and employed in good faith on his part to induce his said wife to go and live with him at Peirce City."

We see no evidence in the case warranting the giving of such an instruction. There is nothing on the face of the letters indicating that the repeated requests to her to come and live with him were a mere artifice, nor was there any extrinsic evidence indicating that they covered

such a purpose; and, as we have already seen, the letters to which they were replies were not in evidence. Nor do we understand the legal conception which ascribes to a solicitation of a husband to his wife to come and live with him the character of a mere artifice. An artifice to induce her to do what? To induce her to do what the law, so far as this record discloses, required her to do. This instruction insinuated into the minds of the jurors an unwarranted suggestion, and must have been highly prejudicial. For the giving of it we should be obliged to reverse the judgment. But beyond this, as there was not sufficient evidence to support a conviction, we must take the course which we took in a similar cause where there was also a failure of inculpatory evidence ( *State v. Fuchs*, 17 Mo. App. 458 ), and order that the judgment be reversed and the defendant discharged.

With the concurrence of Judge Rombauer, it is so ordered.