THE STATE OF MISSOURI, Respondent, v. LEON BROYER, Appellant.

St. Louis Court of Appeals, April 7, 1891.

Criminal Law : ABANDONMENT OF WIFE. In order to warrant the conviction of a husband for the abandonment of his wife (R. S. 1889, sec. 3501), the state must establish that the husband abandoned his wife without cause and with a criminal intent, and that he failed and refused to provide for her. And *held* that the evidence in this cause shows merely an inability but honest effort on the part of the defendant to procure work so as to support his wife, and, therefore, did not warrant a conviction.

*Appeal from St. Louis Court of Criminal Correction.*
Hon. R. A. CAMPBELL, Judge.

REVERSED (*and defendant discharged*).

*John A. Talty,* for appellant

*Henry Wamhoff,* for respondent.

BIGGS, J.—The defendant was arrested, tried and convicted, under an information charging him with wife abandonment. R. S. 1889, sec. 3501. He has brought the case here by appeal.

We decided in the cases of *State v. Greenup,* 30 Mo. App. 299, and *State v. Fuchs,* 17 Mo. App. 458, and the more recent case of *State v. Brinkman,* 40 Mo. App.

284, that, in order to warrant a conviction for this offense, it was absolutely necessary. for the state to establish that the defendant abandoned his wife *without cause and with a criminal intent*, and that he failed and refused to provide for her. The defendant insists that, under this interpretation of the statute, the evidence was insufficient to warrant his conviction, and that he is entitled to his discharge by this court.

The defendant and the prosecuting witness were married in the city of St. Louis on the twenty-eighth day of December, 1889. At the date of the marriage the defendant was in his seventeenth year, and his wife was two years his senior. The marriage was performed without a license and against the wishes of the defendant's parents. The young couple lived with the wife's mother until the twenty-third day of March, 1890.

A few extracts from the evidence will show the character of this prosecution. The wife testified: "He (the defendant) says he was seventeen old years last June. I was nineteen years old the eleventh day of last June, 1890; my mother supported us. We did not have any license. When we were married he was working, but, as soon as we were married, he told me his parents garnished his wages, and he was discharged. He has not obtained any work since. *I know that he tried to get work;* his parents did not want him to live with me; they insisted that he should live at home with them. When we were married, I went with my mother and got $50 from a gentleman to start us in housekeeping. *I think the defendant would work and make money, if his parents would allow him to, but they will not, and garnish his wages.*"

Mrs. Kendrick testified: "I am the mother of the prosecuting witness. From the time he (defendant) married my daughter and went to live with her, I supported them until he left on the twenty-third of March, 1890. When he married and went to live with my daughter he was working. Then his parents

garnished his salary, and he was discharged. *I know that he attempted to get more work since, but could not.* I and my daughter told him at last that I could not support him longer ; that he would have to get work and support his wife regardless of the action and conduct of his parents, or he would have to leave. He then left."

The defendant testified, and he corroborated what had been said by his wife and mother-in-law. We extract the following from his testimony : " I went to live with her ( his mother-in-law ), on the twenty-eighth day of December, 1889. The day after I went to live with her, my parents garnished my salary, and my employer told me he did not need my services any longer. From that time up to the present day I have tried to get work, but have been unable to do so. I have never refused to support prosecuting witness, and, if my parents would allow me to work and not garnish my salary, I would do so. I left, because her mother ( who had been supporting us ), and the prosecuting witness also, told me that I would have to get work and collect my salary to support her, or I would have to leave. I was compelled to leave, as I could not get work or collect any money. * * * I asked my parents to consent to the marriage but they would not."

It seems to us that the troubles of this young husband were serious enough without placing upon him the additional burden of a criminal prosecution. What had he done that was criminal? Was it a crime to fail to secure employment? The wife and mother-in-law both say that the defendant tried to get work, and would have succeeded, had it not been for the action of his parents. When the mother-in-law became tired of boarding him, she ordered him either to secure employment or leave her house. As the first alternative was impossible, he was compelled to accept the latter. Wherein was this an abandonment of the wife, without cause, and with a criminal intent ? The defendant made

an honest and continuous effort to secure employment, and failed through no fault of his. This seems to have been the extent of his offending.

The statute under which the defendant was convicted is a meritorious one, but it was never intended to apply to such a case as this.

The judgment of the conviction will be set aside, and the defendant discharged. All the judges concurring; it is so ordered.