## STATE OF MISSOURI, Respondent, v. ADOLPH TIETZ, Appellant.

St. Louis Court of Appeals. Submitted on Briefs December 10, 1914. Opinion Filed January 5, 1915.

1. CRIMES AND PUNISHMENTS: Child Abandonment: Instructions: Necessity of Covering Case. Under Sec. 5231, R. S. 1909, it is obligatory on the trial court, in criminal cases, to cover the whole case by instructions; and hence, in a prosecution for child abandonment, under Sec. 4495, as amended by Laws 1911, p. 193, where defendant requested the court to charge on the defense relied upon, that the wife refused to live with defendant in the habitation provided by him, or to let him take the children, *held* that the defense should have been covered by proper instructions.

2. CHILD ABANDONMENT: Elements of Offense: Sufficiency of Evidence. Under Sec. 4495, R. S. 1909, as amended by Laws 1911, p. 193, declaring it to be an offense, if a man, without good cause, abandons his child, under the age of fifteen, and fails, neglects or refuses to provide for it, there must be a concurrence of abandonment without good cause, with criminal intent, and of failure to furnish it necessaries; and hence, where the mother, having the custody of children, refused the father's offer to provide a home and care for them, and they were provided for by their grandparents, the father was not guilty of the offense denounced by the statute.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

State v. Tietz.

Reversed.

*Osmund Haenssler* for appellant.

(1) The State must prove each and every element of the alleged abandonment by defendant of his children, including his criminal intent to abandon his children, and a refusal to provide for them. State v. Greenup, 30 Mo. App. 299; State v. Brinkmann, 40 Mo. App. 284; State v. Satchwell, 68 Mo. App. 39; State v. Doyle, 68 Mo. App. 219; State v. Linck, 68 Mo. pp. 161. (2) The defendant offered to take the children and offered to support them if the wife would come and live with him; the offer to support is a good defense. State v. White, 45 Mo. 512. (3) The statutory crime of abandonment is not established, notwithstanding an abandonment might be proved, where the wants of the child or children are provided for by others. State v. Thornton, 232 Mo. 298. (4) The trial court failed, neglected and refused to instruct on all points of law involved in the case. State v. McCaskey, 104 Mo. 644; State v. Patrick, 107 Mo. 147; State v. Nelson, 118 Mo. 124. (5) The court erroneously refused to permit the defendant to prove by his witnesses the fact that the prosecuting witness refused to permit him to have the children when he was ready and able to furnish them with a suitable home. State v. White, 45 Mo. 512; State v. Thornton, 232 Mo. 298.

*Arthur V. Lashly*, Prosecuting Attorney, for respondent.

(1) The intent to criminally abandon and fail to provide for and support his children may be gathered from the acts and conduct of the defendant, and it is not necessary to specifically prove the intent where it is not alleged in the indictment or information. State

186MoApp43

v. Beverly, 201 Mo. 550; State v. Schloss, 93 Mo. 361; State v. Hall, 85 Mo. 669.

REYNOLDS, P. J.—The prosecution was commenced against the defendant before a justice of the peace in St. Ferdinand township, St. Louis county, on complaint of the former wife of defendant, the prosecution being instituted under section 4495, Revised Statutes 1909, as amended by the Act of March 30, 1911 (Laws 1911, p. 193), for the abandonment of two of his children, born in lawful wedlock, etc., both of the infants under fifteen years of age.

It is in evidence that the parties were living at Vigus, in St. Louis county, having originally lived in St. Charles county. At Vigus they lived with the father and mother of the complaining witness, and at St. Charles with the father and mother of the defendant. Along in May or June, 1911, defendant went to St. Charles, resuming his residence with his father and mother. At St. Charles he was at work on the railroad as a laborer, earning $1.50 a day. He had also worked at the car shops in St. Charles. The complainant was the divorced wife of defendant and under the decree of divorce it appears, although neither that decree nor the record in it was in evidence, that she resumed her maiden name of Caktion. The cause of the divorce appears to have been desertion, but it seems that the decree did not make any award of the custody of the children nor award alimony or maintenance. The parties had been married at St. Charles, in October, 1907. The older child was born at St. Charles, some time in 1908, the younger child was born at Vigus, in St. Louis county, in 1911. During their marriage, as before stated, they had never kept house themselves but had lived at St. Charles with the parents of defendant or of his wife, and when in St. Louis county they with their children had lived with the parents of the complaining witness until the death of her mother, then with her

father. After they had been living in St. Louis county for some time, and defendant had returned to St. Charles, he asked his wife to take up housekeeping there by themselves. She refused to do this. When she left her husband in St. Charles and moved to the residence of her parents in St. Louis county, she neither consulted her husband about it, nor said anything to him of her intention. The first he knew of it was when he found she had left. At the time of her confinement in St. Louis county, defendant attended to her and waited on her, coming from St. Charles for that purpose, and remained with her in the home of her father in St. Louis county for some three weeks, working as a section hand. When the complaining witness recovered from her confinement and the baby then born to them was about six weeks old, defendant again asked her to go back with him to St. Charles and go to housekeeping there. She refused to do this.

While the parties were at St. Charles on the last occasion, and at the home of the parents of defendant, he requested her to stay at St. Charles and go to housekeeping, his father and mother offering them the use of their house, and defendant's brother offering them a house and the wife a complete set of household and kitchen furniture, if she would live with her husband in St. Charles. She refused this offer, saying that she "did not want to take any dead person's furniture," and did not want her sister-in-law's furniture, meaning by that that her brother-in-law's wife had died, it being the house in which he and his wife had lived until the death of the latter, the house still furnished. Mrs. Caktion, the prosecuting witness and former wife of defendant, testified that there was adequate and sufficient household furniture for them, and the house that they offered her and her husband was suitable, but that she refused to occupy a house which had been occupied by her brother-in-law and his wife before the death of the latter, or to use their furniture. The house, she said,

was large enough for herself and husband and children and adequate and was in a respectable part of the town.

There was testimony tending to prove that on the occasion of the confinement of his wife in 1911, defendant had lived in the house with her and their children and her father, all living on a farm, defendant living there three or four weeks and working for the Rock Island Railroad as a section hand and earning $1.50 a day. There was testimony tending to prove that while defendant had not directly contributed anything toward the support of his children or either of them while they were living in St. Louis county, that his father-in-law and an uncle of his wife had bought most of the family supplies, but that the latter looked to, or supposed defendant would pay him for things he—the uncle—had bought. Defendant, it is in evidence, had run bills for a lot of family supplies, and which he had not paid. A lot of bills were contracted for by defendant, as a witness testified, although they were at that time living with her father and mother and they had not been paid. These bills were for food for his wife and children and for his father-in-law. The goods had been charged to defendant and the uncle paid for them on the understanding that defendant could pay him back at his leisure, when he was able to do so. The father of the prosecuting witness testified that the prosecuting witness had been living with him ever since she had been married, having been married four or five years. They had moved to St. Louis county from St. Charles county, defendant coming over to the St. Louis county residence late in the spring of 1911, remaining there about three weeks, working on the railroad with his father-in-law, getting $1.50 a day and living with his father-in-law, his wife and children there. He did not contribute anything to the support of his children while he was there; was there when the last child, the baby, was born, and had not yet paid the doctor bill for services on that occasion. When defendant and his wife

lived with this witness there was no agreement with him about his paying any expenses, witness paying them himself; did not know of defendant paying a penny toward the support of his wife and children; did not know exactly when defendant left the St. Louis county residence; was in the habit of coming and going whenever he got ready; has not been back since he finally left; came then to get his clothes. The mother of the two children are still with her father, the latter saying that he supposed they would be until he died.

In his own behalf defendant testified that he resided at St. Charles, Missouri; that his wife at that time was living in St. Louis county; prior to that she had lived with him in St. Charles. When she moved to St. Louis county, he testified that all he knew about it he heard from some of the neighbors, who told him she had moved to St. Louis county. He first visited her there on the 14th of May, 1911, on the occasion of the death of her mother; remained there that evening, coming back to St. Charles and returned to Vigus on the 15th of May, the following day, going to the funeral of his wife's mother. He then returned to St. Charles but went back to Vigus a few days afterward, his wife having requested him to come to Vigus, telling him that if he would come back to Vigus, she would go to housekeeping with him at St. Charles. She was then about to be confined. After his wife's mother died, defendant asked her to go to housekeeping with him and asked her to be confined at his mother's home in St. Charles. She refused, saying she wished that to happen at Vigus. While at Vigus he waited on his wife while she was sick and after she was able to be up he worked at Vigus about three weeks, then got another job at St. Charles, where he could make more money and asked his wife to move with the children to St. Charles. She said that she would not; that if she moved she "would move further up the road." Asked whether he was willing at the time

he left to take his children with him, he answered that he was. This was objected to, objection sustained, defendant excepting. On cross-examination he stated that when he left Vigus, the youngest child, which had been born there, was about a month old; that while he was working at Vigus he got $1.50 a day, working there two or three weeks; did not give his wife any of the money that he earned for the children. Asked if he had ever had a home since he was married, he said "Yes," at his father's home. Asked if he had ever provided a home of his own, he said he had, at West Highlands, after his wife's mother died but neither he nor his wife ever lived in it. During all their married life they lived with his wife's father. Asked if it was a fact that during that time the wife's father had supported the whole family, he said, "No, sir, he did not;" that he (defendant) had supported his family a great deal of the time, although not all of the time. Since the 15th of May, or the 15th of June, up to the time of the trial he had not provided anything for the support of these children; was not then working, although able to work. On redirect examination he testified that during the time that he contributed to the support of the family, they were all living with his father-in-law, and that he helped provide for them. Asked if the children needed anything at the time he was at Vigus in the way of food or clothing, the question was objected to and the objection sustained, defendant excepting.

Defendant's father, being called as a witness by defendant, was asked what property he had in St. Charles, defendant's counsel stating that they proposed to show the amount of property he had and offered to show that he had property which he had offered to his son. This was objected to and excluded, defendant duly excepting. At the time of the son's marriage, the father testified, his son had no property. Asked by defendant's counsel whether he (witness)

had offered to assist his son he answered, "Yes." The question was then objected to, the objection sustained, defendant excepting. Counsel for defendant then offered to show by this witness that defendant had a home provided with every necessity and a place to take his wife and children to, to show that he had provided a proper and suitable place to take them to, and that they refused to go with him. The court sustained this objection, holding that "children of these tender years could neither refuse nor accept anything of the sort." Defendant duly saved exception. Defendant thereupon offered to show by another witness, the mother of defendant, that a home and everything was provided for this defendant's wife and children and that they were asked and requested to come there and did not. The court asked counsel if they meant to show that the wife "was offered to come there and go there with her children?" Counsel for defendant answered, "Yes, Your Honor, and that she was asked to come there and be confined and receive all the care and treatment necessary." This was objected to, objection sustained and defendant duly excepted. Counsel for defendant then offered to show by another witness that this house, which was offered to the prosecuting witness, was provided and furnished with the necessary furniture to provide a home for people in their circumstances. This was objected to and excluded, defendant excepting. Defendant's counsel then offered to show by another witness that he had heard defendant request his wife at Vigus to come with him at St. Charles and live there; that he had a home provided and that the wife refused, stating that if she moved she would go further up the road. On objection of the attorney for the State this offer was refused, defendant excepting.

This is substantially all the testimony in the case. At the close of it defendant asked an instruction to the effect that under the law and evidence defendant was not guilty as charged in the information and that the

jury should find him not guilty. This was refused, defendant excepting.

At the instance of the State the court instructed the jury, in substance, that if they found from the evidence that at the township of St. Ferdinand, in the county of St. Louis, State of Missouri, the defendant, within one year before the filing of the information in this case, was the father of two children, one three years old, the other four months old, naming them, ''and did unlawfully, wilfully and without good cause abandon said children and failed, neglected and refused to maintain and provide for them, then you will find the defendant guilty as charged in the information,'' defining the punishment as prescribed by statute.

It further directed the jury at the instance of the State that the information is a mere formal charge and not in itself any evidence against the defendant, who, in law, is presumed to be innocent; that this presumption attends him throughout the trial until his guilt is proven beyond a reasonable doubt, and that the jury could not convict him unless the State had proven his guilt to their satisfaction and beyond a reasonable doubt; that if, upon the consideration of all the evidence in the case, the jury had a reasonable doubt of defendant's guilt, they should give him the benefit of the doubt and acquit. ''Reasonable doubt'' was properly defined.

The court further instructed the jury that defendant is a competent witness in his own behalf but the fact that he is the defendant and as such interested in the result of the case, may be considered in determining the credibility of his testimony, yet, as a whole, the jury should receive and consider his testimony like that of any other witness, subject to the same rules, as explained in other instructions. Defendant duly saved exceptions to the first instruction.

State v. Tietz.

Of its own motion the court instructed the jury that their verdict could only be returned by the consent of all twelve of the jurors agreeing to it.

At the instance of defendant the court instructed the jury that they were the sole judges of the credibility of the witnesses and then followed this with an elaboration by what rules the credibility of the witnesses was to be determined, concluding with the direction that if the jury found that any witness had wilfully sworn falsely as to any material matters involved in the trial, the jury might reject or treat as untrue the whole or any part of the witness's testimony. This was the only instruction given at the instance of the defendant.

The defendant then requested seven instructions, all of which the court refused. The first of these refused instructions was to the effect that before the jury could convict, they must find that defendant "abandoned his children, under the age of fifteen years, without good cause and with criminal intent, and with such intent failed to provide for said children;" that a mere abandonment by defendant of his children and a failure to support them, does not prove the criminal offense charged in the information; but that the State must prove to the jury; beyond a reasonable doubt, that the defendant had not good cause for the alleged abandonment of his said children and that the alleged abandonment was with the intention to not provide for them in the future, regardless of their needs and situation, and unless the jury so believed beyond a reasonable doubt, that defendant without good cause did, at the time and place alleged in the information, abandon his children, under the age of fifteen years, with the intent not to provide for them in the future, regardless of their needs and circumstances, they must acquit defendant and find him not guilty of the offense charged in the information in this case.

In another of the refused instructions, numbered 5, the court was asked to charge the jury that if they believed from the evidence that since the date of the alleged abandonment, the defendant secured, at St. Charles, Missouri, a house and furniture necessary for a home for his wife and children and asked his wife to come to this home with their children and live with him, and if they further believed from the evidence that the proffered home was such as was sufficient for his station in life, then it was the duty of defendant's wife to go with her children to the home so secured by defendant, "if you further find from the evidence that defendant's wife, without good cause, refused to live with defendant at the home so secured by him and refused to let him have his children that he might provide for them according to his means, you must acquit the defendant and find him not guilty."

Another of the refused instructions, numbered 6, was to the effect that the law does not require defendant to pay his wife any sum of money for the support of the children; "that he, as their father, had the right to their custody, and if you find that he offered to take said children and provide for them, that said offer was made in good faith and that defendant was able, by the assistance of his parents, to care for such children, but that his wife refused to give them to him, you must find the defendant not guilty."

Another refused instruction was to the effect that if the jury found and believed from the evidence in the case that defendant, after he and his wife separated, offered to take the care and custody of the children and made the offer in good faith, but that his wife refused to give him the custody of the children, but retained them in her own custody, and that they there received sufficient shelter, food and clothing, they must acquit defendant.

Other of these refused instructions were covered by the instructions given by the court at the instance

of the State or of its own motion and are not necessary to set out.

All these were refused, defendant duly saving exception.

The jury returned a verdict of guilty of child abandonment, as charged in the information, assessing the punishment at a fine of $200. Judgment followed, from which defendant has duly perfected his appeal to this court.

A conviction in this case cannot be sustained.

It is said in State v. Vollenweider, 94 Mo. App. 158, 67 S. W. 942, a case of wife abandonment, that had the defense rested on the ground of a good cause for abandonment, it would have been the duty of the court to have defined the cause or causes that would in law excuse the defendant. That was the defense in this case but the trial court refused all of the instructions asked by defendant on this theory, among others, those we have designated as 5 and 6, which instructions set up the defendant's defense that he had good cause, to-wit, the abandonment by his wife, she taking the children with her, refusing him any opportunity to provide for them. In the instructions which the court did give, it in no way covered this defense. By statute and by numerous decisions, it is obligatory on the court in criminal causes to cover the whole case by instructions. We are not holding that these refused instructions are technically correct, or that they should have been given in the form asked. But the court, by proper instructions should have covered the defense. So that on the action of the court on the instructions, we would be compelled to reverse the judgment.

A very careful reading of the entire transcript of the testimony satisfies us that this not such a case as falls under the statute upon which the prosecution is founded, that is to say, section 4495, Revised Statutes 1909, as amended by the Act approved March 30, 1911 (Session Acts 1911, p. 193), and that the defendant

should not have been convicted. In so concluding we pass over the action of the court on the exclusion of evidence, with the remark that the action was error for which the judgment would have to be set aside. But on the evidence which was admitted and is before us, the conviction cannot stand.

We have in this State, in addition to this section 4495, as amended in 1911, and upon which this prosecution is founded, section 4492, Revised Statutes 1909, which provides: "If any mother of any infant child, under the age of sixteen years, or any father of any such infant child, born in or legitimatized by lawful wedlock, . . . shall, without lawful excuse, refuse or neglect to provide for such infant . . . necessary food, clothing or lodging, or shall unlawfully and purposely assault such infant or apprentice, whereby his life shall be endangered or his health shall have been or shall be likely to be permanently injured, the person so offending shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding one year, or by a fine of not more than $1000, or by both such fine and imprisonment." This section has been construed by our Supreme Court in State v. Thornton, 232 Mo. 298, 134 S. W. 519, which we will refer to hereafter. It is the only decision under this section which we have found.

The first act covering the offense of wife and child abandonment of which we are aware, was the Act of 1867 (see Acts 1867, p. 112); 1 Wagner's Stat. (Ed. 1872), secs. 34 and 35, p. 497. This act made it a misdemeanor for every husband, without good cause, to abandon his wife, and fail, neglect or refuse to maintain or provide for her; "or who shall, without good cause, abandon his child or children, under the age of twelve years, born in lawful wedlock, and fail, neglect, or refuse to maintain and provide for such child or children." This went into the revision of 1879 as section 1273, the two sections of the Act of 1867 being

consolidated into one. This section is word for word that of section 3501, in the revision of 1889, and section 1861, revision of 1899. By the Act of June 4, 1909 (Acts 1909, p. 450), this section 1861 was amended by confining its operation exclusively to wife abandonment. At the same session and by the same act, that is the Act of June 4, 1909, what is now section 4492, which had been section 1857, of the revision of 1899, was amended so as to read as we have before noted, making the offense a felony. So stood the law until 1911, when by the Act of March 30th of that year (Laws 1911, p. 193), section 4495, Revised Statutes 1909, was amended and section 1861 of the revision of 1899, reenacted, the only change in it being that the age of the child was raised from twelve to fifteen years.

It will be noticed that in the Thornton case the learned judge who wrote the opinion laid stress on the word "necessary," holding that section 4492 carried a punishment for failure to provide "necessary" food. The word "necessary" is not used in section 4495 as amended by the Act of March 30, 1911, but that section, as we understand it in the light of the decisions which have construed it and its predecessors, does relate to necessary provision for the wife and children, as clearly as if that word had been used. We think the decisions under it demonstrate this.

The first decision that we have found in which what is now the amended section 4495, was in State v. White, 45 Mo. 512, referring to that section as it appeared in the Acts of 1867, before cited. In that case the defendant, among other evidence, proposed to ask a witness if the defendant had not rented a house from him which defendant's wife refused to occupy. This question, on objection, was excluded. Our Supreme Court said: "The question clearly went to the merits of the issue. If defendant furnished his wife with a suitable residence, he had so far contributed to her support; and if she refused to occupy it, it certainly was not his

fault." For the refusal to allow this question to be asked, the judgment of conviction in that case was set aside.

In State v. Newberry, 43 Mo. 329, it was held that in 'a prosecution under this section, the wife was competent to swear to the complaint.

These are the only two cases in which we find this section to have been considered by our Supreme Court, until in State v. Thornton, supra, the corresponding section 4492, as we have before remarked, was construed.

Our court in State v. Wonderly, 17 Mo. App. 597, had before it the construction of this section, then section 1273, Revised Statutes 1879, where the prosecution was for the abandonment of a wife and child. Commenting on a verdict which the court held to be excessive and that it had been rendered so by the admission of improper testimony, the court said (l. c. 601): "It was shown that the wife had a home at her father's, where she was always comfortably provided for and preferred to remain; so that no element of destitution or family suffering occasioned by the defendant's neglect was apparent in the case."

In State v. Greenup, 30 Mo. App. 299, a prosecution against the husband for abandoning his wife, referring to the fact that the defendant had written several letters to his wife after their separation, soliciting her to come to him and live with him at his own home, and representing that he was able to provide for her and promising her good treatment in case of her good behavior, our court has said (l. c. 301): "We see no evidence in the record tending to show that she would not have been well provided for and kindly treated if she had complied with these repeated requests. She refused to comply with them." Commenting on this state of affairs, our court further said (l. c. 303):

"This is a criminal action. The State, and not ·the wife, is the complaining party. . . . Two elements are essential to constitute this offense: The criminal intent to abandon without cause, and the failure and refusal to provide for the wife. [State v. Fuchs, 17 Mo. App. (l. c.) 461.] In order to make out its case, the State must show, beyond a reasonable doubt, the existence of both of these elements. Evidence of a mere abandonment and a subsequent failure and refusal of support does not prove the criminal offense denounced by the statute. The State must further show that the defendant had not 'good cause' for the abandonment. The State must show this, although it involves the necessity of proving a negative; for the rule in this State even in civil cases is, that where the plaintiff grounds his right of action in the negative averment, and the proof of the affirmative is not peculiarly within the knowledge and power of the defendant, the establishment of the negative is an essential element of the plaintiff's case. [State v. Schar, 50 Mo. 393.] In this case the *absence* of 'good cause' for the abandonment, if such existed, was not a fact peculiarly within the knowledge of the. defendant, and, therefore, the State was bound to prove it in order to sustain a conviction of a criminal charge. . . . In this record we discover no such evidence in support of the averment of the indictment that the abandonment was 'without any good cause whatever.' . . . . A husband, it has been well said, is bound to provide for his wife in his family; and while he is guilty of no cruelty to her, and is willing to provide for her a home and all necessaries there, he is not bound to furnish them elsewhere. [McCutchen v. Mc-Gahry, 11 Johns. (N. Y.) 282, per Platte, J.; Rutherford v. Coxe, 11 Mo. 353, per Napton, J.] In a latter case Judge NAPTON, speaking for the Supreme Court, said: 'The question is one of desertion; and we hold that the wife is bound to follow the fortunes of her

husband, and to live where he chooses to live, and in the style and manner which he may adopt.' Messenger v. Messenger, 56 Mo. 337.''

It is true that Rutherford v. Coxe, supra, is to recover for the value of necessaries furnished the wife, and Messenger v. Messenger was an action for divorce. Their application to the case at bar is that they are illustrative of the point that an offer to return, if made in good faith, breaks the force of the desertion. These two cases, that is the Fuchs case and the Greenup case, were followed and approved in State v. Brinkman, 40 Mo. App. 284.

In State v. Brinkman, supra, the rule announced in State v. Greenup, supra, is repeated, namely, that to constitute the offense of wife abandonment, there must be, first, the criminal intent to abandon without good cause; second, the failure to provide for the wife. At page 288, it is said by Judge Biggs, speaking for our court:

''It is quite clear that the State failed to show by satisfactory proof that the defendant with criminal intent, abandoned his wife without 'a good cause.' The reasons assigned by her for leaving her house were, if true, insufficient to justify her in the course pursued. According to her own statement she abandoned her husband, while he was at work, without notice or warning to him of her intentions. The only excuse given by her for her unusual conduct was that her husband failed to pay his bills.''

Our court concludes that the evidence in the case was insufficient to show that the defendant has abandoned his wife without good cause.

In State v. Broyer, 44 Mo. App. 393, referring to the Greenup, Fuchs and Brinkman cases, supra, our court repeats that it is absolutely necessary for the State, in a prosecution under this section, to establish that the defendant abandoned his wife ''without good cause'' and with criminal intent and that he failed and

refused to provide for her, reciting the evidence which tended to show that the husband had tried to get work but had been unable to do so. In that case it appeared that the young couple were living with the mother of the wife. She (the mother) became tired of boarding the defendant and ordered him either to secure employment or leave her house. Says our court (l. c. 395): "As the first alternative was impossible, he was compelled to accept the latter. Wherein was this abandonment of the wife, without cause, and with a criminal intent?"

In State v. Good, 46 Mo. App. 515, a prosecution for abandonment of wife and child, and failing, neglecting and refusing to support them, the judgment of conviction was reversed and the cause remanded for the introduction of prejudicial and improper evidence.

In State v. Weber, 48 Mo. App. 500, a prosecution for wife abandonment, a decision by the Kansas City Court of Appeals, the rule is repeated that in order to constitute the offense, two things must concur, viz.: The husband must have abandoned his wife and, in addition, must have failed or refused to maintain or provide for her. Two elements, says the court, go to make up the offense under the statute, to-wit, desertion or abandonment, and nonsupport, and unless both these are shown the prosecution must fail. This same rule is announced in State v. Satchwell, 68 Mo. App. 39; State v. Linck, 68 Mo. App. 161; State v. Doyle, 68 Mo. App. 219.

It is true that most of these cases which we have referred to are cases of wife abandonment, but it is to be noted that in section 4495, as amended, the words "without good cause," apply to abandonment of the child just as fully as to abandonment of the wife. So that while it is said in the decision that to constitute the offense of abandonment of the wife, the abandonment must be "without good cause," and must

186MoApp44

be with criminal intent to abandon, we must hold that to be equally true with respect to abandonment of the children and failure to provide them with support. The mistake which the learned trial judge fell into is evidenced by his ruling on one of the questions asked, and which ruling we have quoted, to the effect that "children of these tender years could neither refuse nor accept anything of the sort," referring to the offer of defendant to provide a home and care for his wife and children. Of course these children were too young to consider any offer. But they were in the custody of their mother; the offer was to her for herself and for them. She was the only one to whom it could be made and she refused it. That refusal stands as exculpation of the defendant, even as against these children. These children were those who were to be provided for and to be furnished with necessaries. The mother had them in her sole charge and she refused the offer.

In State v. Thornton, supra, it is distinctly held (1. c. 306), "that if the infant children are receiving necessary food, clothing and lodging from any source, there is no occasion for the State to interfere by penal law or otherwise." These children were certainly receiving necessary food, etc., from their grandparents, even if it is not clear that the father supported them, and while the Thornton case arose under section 4492, we see no reason to place a different construction upon a case, as here, under section 4495 as amended. So much as to failure of defendant to support these children.

When we consider the abandonment feature we find that instead of him abandoning his children without good cause, the evidence conclusively shows that the abandonment was on the other side, the wife taking the children from him and refusing him their custody and care. It is not to be overlooked that this section of the statute uses the words abandon and failure to maintain in the conjunctive; providing that if any man

"shall, without good cause, abandon or desert his wife, or abandon his child or children under the age of fifteen years, born," etc., "*and* shall fail, neglect or refuse to maintain them, he shall, on conviction," etc. That is, two things are necessary to constitute the offense, abandonment of the children *and* failure, neglect and refusal to maintain and provide for them. If either fails the offense is not under the statute. So it is expressly held in State v. Weber, supra. Here, on the clearest possible evidence, both of these elements are lacking.

Our conclusion is, that under the evidence this defendant was improperly convicted; that there is no evidence warranting his conviction under this statute. [State v. Fuchs, 17 Mo. App. 458.]

The judgment of the circuit court is accordingly reversed and the defendant discharged. *Nortoni* and *Allen, JJ.,* concur.