EARNEST IRVING V. THE STATE.

No. 3102.  Decided April 29, 1914.

1.—Abandonment—Information—Name of Wife.

Where the information failed to name the defendant's wife, in a prosecution under the statute which provides that if any husband shall wilfully, etc., neglect, etc., to provide for the support, etc., for his wife, the same was insufficient.

2.—Same—Insufficiency of the Evidence.

Where under the second count in the information which alleged that defendant abandoned his son, etc., the State failed to prove the name of the son as alleged, etc., the same was insufficient to sustain a conviction for abandonment.

3.—Same—Insufficiency of the Evidence—Temporary Separation—Poverty of Husband.

Where defendant was charged with unlawfully deserting and abandoning his wife and minor child and the evidence only showed a temporary separation and poverty and inability of the husband to provide for them, the conviction was not sustained, as the statute carries with it the idea of wilfulness, and does not mean that because the man is unfortunate in not having money to support his wife and child that he shall be subjected to a criminal prosecution.

Appeal from the County Court of Tarrant. Tried below before the Hon. Jesse M. Brown.

Appeal from a conviction of unlawful abandonment without justification; penalty, a fine of $25.

The opinion states the case.

*G. R. Lipscomb,* for appellant.—On question of insufficiency of the information: Ranch v. State, 5 Texas Crim. App., 363; Jorasco v. State, 6 id., 238; Rutherford v. State, 13 id., 92; Brewer v. State, 18 id., 456; State v. Snow, 41 Texas, 596; Daugherty v. State, 41 Texas Crim. Rep., 661.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, Judge.—The information contains two counts. In the first count, omitting formal parts, it is alleged appellant "did then and there unlawfully without justification or excuse desert and abandon his wife, leaving her in destitute and necessitous circumstances, without support, and in danger of becoming a public charge." In the second count it is alleged appellant "did then and there unlawfully without justification or excuse desert and abandon his minor child, Robert Irving, leaving him in destitute and necessitous circumstances without support and in danger of becoming a public charge, against the peace and dignity of the State."

The first count is attacked because of the failure to name or state the name of the defendant's wife, or that he had any wife, defendant having no notice of having deserted any certain person, and only has notice of having deserted an unknown and uncertain person occupying a legal status, towit: a wife. Appellant further alleges that same is vague, uncertain and indefinite and wholly insufficient in law. We are of the opinion that count is subject to the motion to quash, and that it should have been sustained. The statute reads as follows: "Any husband who shall wilfully or without justification desert, neglect or refuse to provide for the support and maintenance of his wife, who may be in destitute or necessitous circumstances . . . shall be deemed guilty of a misdemeanor." The count criticised does not contain an allegation even that defendant had a wife, except inferentially by charging he did abandon his wife. It does not even undertake to give a name, and there is no reason given why the pleader failed to insert the name of the wife. From the record it is clearly evident that the name of the wife was known, because she was used as a witness in the case. The court should have sustained this motion to quash.

The second count, which charges appellant with abandoning the son named Robert, in our judgment, is not proved by the evidence. It did not undertake to prove the name of the child by the witnesses. There is evidence in the record to the effect that he left his wife in August, 1913, and contributed very little money to her support subsequently.

With reference to the child, the evidence shows the baby was born to the wife of appellant during the month of January, 1914, and the further fact is stated by her that, "I was at home with my father and mother when he was born." So it would seem from this evidence that a child was born to appellant's wife in January, 1914, and it is supposed to be a boy by reason of the fact he is referred to as "he." The information charges that it was a son and his name was Robert Irving. The evidence does not identify Robert Irving set out in the information as the child of whom the witnesses spoke. It may have been or it may not have been, but the name having been alleged it was necessary to prove it, and in fact it was necessary to allege it.

Generally, under the facts we do not believe the State has made out a case against appellant. It is shown that he and his wife had married about eighteen months or such matter prior to the institution of this prosecution; that they lived with his father-in-law and mother-in-law for some time, who rendered them some assistance, and finally, doubtless with the assistance of the father-in-law, appellant and his wife secured a home of their own or a place to which they could move and to which they did move. After they had moved into this place the brother of appellant's wife also came and occupied part of the house. On account of the ill-treatment, threats, violence, etc., of his brother-in-law, appellant left this house with his wife and went back to the home of his father-in-law's, at which place they remained awhile. Then he and another negro secured a room or place in another part of the city and instituted what they called a pressing club. While at this pressing club his mother-in-law and another woman came there and with a piece of cord wood gave appellant rather a severe beating. He says he could not afford to fight a woman and he got away. He went to see his wife and told her that he was going away, and would come back and get her as soon as he could get money enough to set up housekeeping. The wife says, "We got along all right during the time we stayed together; he was good to me and supported me to the best of his ability; he never told me that he would not come back to me, but on the two nights that he stayed with me, after leaving in August, he stated that he would come back and get me as soon as he could get money enough to set up housekeeping." The wife says she did not know how much he worked while he was gone from her or how much money he earned. After he left in August he visited his wife on two different occasions. Appellant testified that when he was first married he and his wife were very poor and lived with her father and mother for sometime, and with their assistance they started to housekeeping and rented a part of the house to his wife's brother. That on account of mistreatment by his brother-in-law, threats, etc., he went back to his father-in-law's with his wife and continued to live there, and he supported his wife there until August, 1913, at which time he and one of his friends attempted to establish a cleaning and pressing shop on Mills Street in the city of Fort Worth, and during the month of August—the exact date he did not remember—his mother-in-law and

another woman came to the shop and seized a stick of cord wood and began beating him and give him an "awful beating." He says: "I was afraid to strike her; I didn't want to get arrested, and I was afraid to go back home as I thought I would get into trouble with them again, and I did not want to get into trouble with any of them. I did not have any money to move my wife with, and I did not have any property from which I could realize money, or I would have moved her away from her parents. I decided that the best thing that I could do would be to move away and earn money enough to begin keeping house anew." He says he went from Tarrant County to Hill County and there worked on a farm; that he could not get steady work, but worked at odd jobs as best he could. Appellant, speaking of himself and wife, uses this language: "We are like all negroes, both me and my wife work; she washes and irons for the white ladies and I work at anything that I can get to do. She has always worked that way since we were married, and has practically supported herself, or at least has contributed a great deal to the support of ourselves." He says: "I love my wife, and I want to live with her, and I also love my child, and want them both, and I would have lived with my wife during this time if she had not been at her parents, or if I had the money to move them with I would have done so. I left them for the purpose of trying to get us a home of our own. I always told my wife that as soon as I could we would go to living together, but that I could not live with her and her at her parents. I did not know when my child was born, and I have never contributed anything to his support."

There is nothing in this record, under this testimony, as we understand it, that would justify the conclusion that appellant had deserted his wife. He had gone away under the circumstances, and under the testimony of him and his wife the idea of permanent desertion or abandonment is utterly wanting. There is no evidence in the case that the wife was in necessitous circumstances, and the State did not undertake to prove it. Nor is there anything to indicate, as charged in the indictment, she was likely to become a charge upon the public. The evidence shows, and it is all there is in the record, that these two people were negroes; they both worked as indicated by the testimony, and the wife had all along supported herself practically, and had at least contributed to the support by washing and things of that sort that negro women do. He had gone away temporarily to seek a place to get money to get a home for them to go together. It would not do to hold that every temporary separation of husband from the wife would subject him to a prosecution under this statute. Nor do we believe it would be anything like a reasonable or fair construction to place upon this statute that the Legislature intended it to so operate, that is because of the poverty of the husband and his inability to make money he should be subject to a prosecution and a fine of from $25 to $500 and imprisonment in the county jail for a year, under evidence of the character here mentioned. This statute carries with it the idea of wilfulness on the part of the husband or father,

as the case may be, and the purpose not to support his wife or child, either or both, which does not mean and was not intended to mean that because a man is unfortunate in not having money to support his wife, therefore, he should be subject to criminal prosecution. The law carries the distinct basic proposition with it that it must be wilful or without justification or excuse. This testimony does not only not carry this idea but seems to exclude it,—the testimony of the wife and the defendant both.

Believing that this conviction was wrong, the judgment is reversed and the cause remanded.

*Reversed and remanded.*