The court gave a full charge, correctly telling the jury what assault and battery was, what murder, malice, etc., were, to which there was no objection. Then in submitting the case for a finding on assault to murder, it charged the jury as follows:

"If from the evidence you are satisfied beyond a reasonable doubt that the defendant, Mary Garrett, on or about the time charged in the indictment, in the county of Sabine, and state of Texas, with a deadly weapon, and with malice aforethought, did assault the said Alberta Johnson with intent then and there to kill and murder her, by the means charged in the indictment, and if you are further satisfied by the evidence beyond a reasonable doubt that said assault was not made under the immediate influence of sudden passion, produced by an adequate cause (as the same is hereafter explained to you) or not in defense of herself against an unlawful attack, producing a reasonable expectation or fear of death or serious bodily injury, then you will find the defendant guilty of an assault with intent to murder, and so say by your verdict, and assess her punishment at confinement in the penitentiary for a term not less than 2 nor more than 15 years, as you may determine and state in your verdict.

"Before you convict the defendant in this case of assault with intent to murder, you must find beyond a reasonable doubt: (1) That the defendant cut the said Alberta Johnson; (2) that she did so with the specific intent of killing said Alberta Johnson; and (3) that she did so with malice aforethought. And if you have a reasonable doubt as to whether or not all of said three propositions are true, you will not convict the defendant of assault with intent to murder."

The court also submitted aggravated assault and self-defense in her favor. In the charge the court also correctly told the jury what was a deadly weapon.

Appellant objected to the charge of the court solely on the ground that the court failed to charge articles 1147 and 1149 of the Penal Code. That is the whole of the objection, except he quoted these articles in his objection. He asks no special charge on the subject.

This writer is of the opinion that under the circumstances of this case appellant's said objection to the court's charge, especially when the court charged as he did, as stated, does not present reversible error. However, the other two members of the court hold that the objection to the court's charge sufficiently presents the question, and that the trial court erred in omitting to charge the two articles named, and upon their opinion the judgment of the court will be reversed, and the cause remanded.

Another question raised was some claimed newly discovered evidence. Under the stat-

ute and decisions the evidence would not be newly discovered. However, as that question cannot arise on another trial, it is unnecessary to further state or dismiss it.

Reversed and remanded.

---

## DICKEY v. STATE. (No. 4575.)

(Court of Criminal Appeals of Texas. Oct. 10, 1917. On Motion for Rehearing, Nov. 14, 1917.)

1. HUSBAND AND WIFE ⬤═302—WIFE DESERTION—WILLFULNESS.

To convict a husband under the wife desertion statute, he must not only have deserted his wife, or have failed to support her, but it must have been willfully done.

2. HUSBAND AND WIFE ⬤═313—DESERTION—SUFFICIENCY OF EVIDENCE.

In a prosecution for wife desertion, evidence *held* insufficient to support conviction, defendant having been penniless, to his wife's knowledge, when he married her, and his failure to send her money when they were separated by agreement while he was seeking employment having been due solely to inability.

On Motion for Rehearing.

3. BAIL ⬤═64 — APPEAL — RECOGNIZANCE AS BAIL BOND.

The mere fact that to the end of appellant's recognizance were signed the names of appellant and his sureties, under the circumstances that the judgment entering the recognizance recited appellant and his sureties came into open court and were properly recognized, as required by statute, did not constitute it a bail bond.

4. BAIL ⬤═64—APPEAL—RECOGNIZANCE.

If defendant's recognizance was taken and approved by the trial judge, it was not changed into a bail bond, because the judge required defendant's sureties on appeal to sign it; it being a sufficient compliance with the law where taken and approved in open court, though it is unnecessary that the sureties should sign a recognizance so taken and approved, or that it be written at all.

Appeal from Collingsworth County Court; A. C. Nicholson, Judge.

Floyd Dickey was convicted of deserting his wife, and he appeals. Judgment reversed, and cause remanded.

R. H. Templeton, of Wellington, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

DAVIDSON, P. J. Appellant was convicted of deserting his wife, his punishment being assessed at a fine of $100.

Appellant, a boy about 20 years of age, married Miss Essie Thomas, who was about the same age. The marriage occurred about January 10, 1917, at Childress, Tex. They went at once on a visit to appellant's uncle in Arkansas. On their return trip about January 15th, before arriving at Dallas, they agreed that the defendant should go in search of a position or procure some business by which he could make a living and would then return to Wellington for his wife, where she was to remain with her father until appellant had secured a remunerative position.

This was an agreed separation for the purpose stated. She did return to and remain with her father while he was to go, as his wife indicates, to Clovis, N. M., to engage in business. Upon their separation at Dallas he gave her $15 to bear her expenses while she returned to her father's home at Wellington. Debating the matter in his own mind as to the best opportunities, appellant went to Kansas City to see a friend of his who had promised him a position. Upon arriving there, however, the friend had employed another party, but gave him letters of recommendation, and suggested where he might get employment at some place in the state of Colorado. He went there but arrived too late; another man had secured that place. He then went to another town in Colorado and was again disappointed. Finally, at another point in Colorado he received employment. All this occurred within a few days after their separation, and four or five days after being employed, as above stated, he was taken very ill and remained so for a good while. His mother was telegraphed and came to his bedside, and as soon as he was able to travel she carried him to her home, she being a widow. He made no money and had no other employment, and was not able to do anything while sick and up to the time of and during the trial. His wife went to her father's and remained there. He sent her no money, the reason stated being that he had none; and it is also made to appear that when they were married his wife knew he had no property or money, and what he did have was given him by his mother at the time of his marriage. Her father gave her $30, which she turned over to him, and at their separation he handed her $15, keeping what was left to bear his expenses until he could secure a position. She testified, as did her father, that while she had no property except such as he gave her, that she returned to his home and remained with him, and that he cared for her and furnished everything she wanted and she suffered for nothing. That phase of the case is undisputed. It seems also to be undisputed that defendant had no money except as above indicated, and failed to make anything by reason of his sickness directly after his employment. It was their purpose when they separated at Dallas that he was to get employment and secure a residence for himself and wife, and then she was to go to him, or he was to return for her. This it may be stated is substantially the case on the facts.

[1] There are several questions presented on the rulings of the court which are of a reversible nature, both on the introduction of testimony and on the charge and refused instructions. These are all properly and timely presented by exceptions to the charge, as well as refusal to give special requested instructions. In fact, these matters are presented every way they could be under the practice and procedure in criminal cases. In order to convict a husband under this statute he must not only desert his wife, or fail to support her, as the case may be, but it must be willfully done. In a sense, she was not in necessitous circumstances, for she testified as did her father that she wanted for nothing; that he furnished her everything that she desired, and was able to do so. This, however, might not excuse the appellant for not furnishing her means, but it seems to be a fact that he had no money and could furnish no means for her support, all of which his wife understood at the time they were married. He testified he would have sent money to her if he had it, but under the condition he was in he could not secure and did not have it.

[2] Under the cases decided by this court we do not believe the state has sufficient evidence to justify an affirmance. Irving v. State, 73 Tex. Cr. R. 615, 166 S. W. 1166; Furlow v. State, 182 S. W. 308. Taking the case from this standpoint it is unnecessary to discuss the legal questions.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[3] On the original submission, the Assistant Attorney General filed a motion to dismiss the appeal, based upon the idea that what purported to be a recognizance was not a recognizance but a bail bond. The judgment entering this recognizance recites the appellant and his sureties came into open court and were properly recognized as required by the statute, but at the end, however, of this recognizance the names of appellant and his sureties were signed. Because of this the Assistant Attorney General asked the court to dismiss the appeal, because it was in fact a bail bond and not a recognizance. This motion was not discussed in the disposition of the case, the court being of the opinion that it was a recognizance. The mere fact that the names were signed at the bottom of it under the circumstances surrounding the instrument, and its form and circumstances attending it, did not constitute it a bail bond.

A motion for rehearing is now filed by the state asking a reconsideration of the case and dismissal of the appeal, insisting that the instrument was an appeal bond. A sufficient test, and we believe a correct one, in testing instruments of this character, is if a forfeiture was declared upon it under scire facias proceeding, would the forfeiture be sustained? If so, the instrument is sufficient; if not, it would not be sufficient. Appellant filed a reply in the form of a contest to the state's motion. The clerk of the county court where the case was tried reproduces the instrument in his certificate practically, and perhaps literally, as in the transcript. Then he further certifies the above is a true and correct copy of the judgment as entered in the minutes, and that there are no file

marks or other entries on the judgment; and, further, that if any file marks appeared on the transcript of said judgment they were copied from the original draft of said judgment placed with the papers of said cause for entry, and that file marks on the draft of the judgment were entered by mistake, under the impression that the draft of said judgment ought to be marked filed; and he further certifies that it was the custom of A. C. Nicholson, county judge, to require all judgments to be presented to him and have his O. K. before entering same of record. This instrument is shown by the transcript and this certified copy shows it was O. K.'d by A. C. Nicholson, the trial judge. R. H. Templeton, attorney for appellant, filed an affidavit showing the circumstances occurring at the time of the taking of the recognizance and incidental matters. He drew the form of the recognizance before it was entered into by the appellant, and his sureties and presented it to the court. The court took the recognizance but had appellant have the names of his sureties signed to the document, and O. K.'d it as was his custom, and of all judgments entered while he was judge, and that the signatures were fixed to the recognizance at the instance of the judge and on his request, and with the advice by counsel that this was a judgment and did not require the signatures of the parties as in case of a bond, and that the recognizance was duly entered of record as a part of the judgments in said case. He says he prepared this document as above indicated, and presented it to the county judge, and had the recognizance taken and approved; that Judge Nicholson required all judgments drawn by attorneys to be first presented to him and have his O. K. written on same before the clerk would be permitted to enter them.

[4] This is a sufficient statement of the matters in connection with the taking and approval of the recognizance. If, as stated, the recognizance was taken and approved by the judge and had his O. K. on it, this did not change it into a bail bond by reason of the fact that he required sureties to sign it. If it was taken and approved in open court as shown by the clerk and the attorney representing appellant, we think it is a sufficient compliance with the law. It is not necessary that the sureties should sign the recognizance if it is taken and approved, or in fact that it should be written at all; but where it is written, and the recognizance is taken and approved as written, as the judge requires, it would not invalidate it as a recognizance. Had there been a forfeiture of this instrument, we are of opinion that it would have been, so far as that matter is concerned, sufficient to form the basis of a judgment. This we think is a sufficient test of the validity of obligations of this character. The names of the principal and sureties are properly set out in the judgment of the court entering the recognizance, and in this manner it seems was taken and approved.

We are of opinion the motion for rehearing ought to be overruled, and it is accordingly so ordered.