### ED GREEN v. THE STATE.

#### No. 5103. Decided October 23, 1918.

**Wife Desertion—Insufficiency of the Evidence.**

Where, upon trial of wife desertion, the evidence was insufficient to show a wilful desertion, under the statute, the judgment must be reversed and the cause remanded. Following Irving v. State, 73 Texas Crim. Rep., 615, and other cases.

Appeal from the County Court of Wichita. Tried below before the Hon. Harvey Harris.

Appeal from a conviction of wife desertion; penalty, a fine of seventy-five dollars.

The opinion states the case.

*T. F. Hunter*, for appellant.—Cited cases stated in the opinion.

*E. B. Hendricks*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted under a charge of wife desertion.

The facts seem to be practically uncontroverted. The wife testified that she and appellant had been married about seventeen years, the latter three years of which time they had lived in Wichita Falls. They had two children, one over fifteen and the other just over fourteen years of age. They had moved to Wichita Falls and got along well together for some time after they located at that point. The wife says: "Mr. Green and I had no trouble until about a year before he deserted us and trouble began then because he was drinking. He drank up all he made. At the time he left we had a five-room modern house

on a regular size lot and a vacant lot[6] adjoining it.". This property was worth $1800 with an indebtedness hanging over it of $500. Before appellant left home he went over the matter several times with his wife in regard to leaving Wichita Falls. In these conversations he told his wife that he had gotten in such condition he could not let whisky alone; that he must get away from it. She declined to go with him, and declined to sell their property. She says: "I did not consent to sell our home, because I was afraid he would squander the money." She further testified: "He left and I stayed in charge of the place and control of it. I never did ask him to sign any deed, never wrote or said anything about it to him after he left. However, I did sell the vacant lot; he signed the deed to the vacant lot, which was sold to my father for $200. I took the money and paid most of it on the notes that were against our home. He did not ask me for any of the $200. He signed the deed to the vacant lot without a word and never asked for the money. This was just a short time after he left." Quoting further: "After he left Wichita Falls he went to Childress. While at Childress he sent me some money, but very little. He would send the money in registered letters, and I have no idea how many I have gotten. There were only five or ten dollars in each letter. I do not know how often they came. I did not keep count of them. Sometimes I would get one a month, sometimes two or three. He has sent money more regularly since he has been in Electra. I have preferred living in Wichita Falls, and had objected to move because I have believed that it was better for the girls to stay here." She further says: "It has been more than two years since he left us. I went to Mr. Greenwood, who was county attorney at that time that Ed Green left us, and tried to file a complaint against him, but Mr. Greenwood told me that there was nothing to it and I could not prosecute him."

One of the daughters testified: "My mother and father got along together all right when they lived together and did not have any trouble that I know of." It is also in evidence that appellant talked to his wife several times about leaving Wichita Falls and going somewhere where he could save his money, but she declined to go; and it is also in evidence that he went away in order to make money that he might assist in the support of his family. It is also in evidence that the wife and two daughters worked and made $80 a month, which they used in support of the family. Appellant testified that he had no property of his own unless it might be said he owned one-half interest in the home where his wife and daughters lived; that he left home in January, two years before he was testifying, because it had gotten so he could not do any good in Wichita Falls. The drink habit had grown on him until it looked like he could not control himself. "After I was convinced that I could not stay and could not leave whisky alone, I talked to my wife about it, in fact I talked about it several times. I tried to reason about the matter with her. I explained to her before we came to Wichita Falls, and even the two or three years that we were here we

had been able to save a little money to pay on a home, and after that I got in a habit of drinking and spent all of my money. The only way I thought I could get out of it was to leave town and get away from whisky. She objected to that and did not even consent to sell the place after I agreed to allow her to keep the money. Neither would she agree to leave Wichita Falls with me. I went to Childress and began to do better. I tried to send her money every week. I sent her five or ten dollars at a time. It was all I could spare. I had a guarantee of about $15 per week for my work. I had to pay board and other expenses, which made it hard for me to send money; however, I sent her all I could spare. I have never in my life refused her money when I had it. I have sent her more money since I have been at Electra because I have had more work and have made more money. At the time I left home I had no money, but I had a little credit at the Factory Grocery Store. I told her that she could get groceries there on my account and that I would pay for them. Mr. Ray ran that store and I made arrangements with him to let her have some groceries. I have always been willing to live with my family and desirous of supporting them, but I could not afford to live here and my wife has always refused to leave here. I told her at the time that I left the home place was hers, and that she could do with it as she wished. At the time she sold the lot I signed the deed gladly and did not ask for nor did I want any of the money. I would as gladly have signed the deed to the other place as I did that one; in fact, I so told her. I have always been willing for her to have the place and would have given a deed for it if she had wanted it, and I am willing for her to have the place and will sign a deed this minute to her for all the interest that I have in the place. I want to do everything for her and the children that I am able to do." This is the substance of the case on the facts.

Without going into the questions of charges and exceptions to the charge of the court and incidental matters, they are sufficiently presented under the record, and appellant, among other things, asked a special charge to instruct the jury to acquit because the facts did not show a wilful desertion under the statute. We are of opinion this charge should have been given, and further of the opinion that the evidence does not show a violation of the statute. The desertion, if it be termed a desertion, was not wilful. He sent his wife what money he had and could spare after he left, and this seems not to be questioned. He offered to make a deed to her to all the property. She admits that he was sending her money to assist in support of the family, and his statement that it was the best he could do under the circumstances is not questioned. She testified that she and her daughters were making $80 a month, and had no rent to pay; that he was sending from five to ten dollars or more per week in addition to the above. It would hardly be questioned that he did not desert her, because he did his best to induce her to go with him where they could make a living but she declined. Under all these circumstances we are of

opinion that this judgment should not be permitted. The statute has not been violated as it was intended to operate by the Act of the Legislature. See Irving v. State, 73 Texas Crim. Rep., 615; Moore v. State, 78 Texas Crim. Rep., 270. The same view of the law seems to have been taken by the Missouri court, State v. Loving, 168 S. W. Rep., 339; State v. Broyer, 44 Mo. App., 393; State v. Greenup, 30 Mo. App., 299; State v. Doyle, 68 Mo. App., 219.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*