### GEORGE SACKHIEM v. THE STATE.

#### No. 7132.   Decided October 18, 1922.

**1.—Child Desertion—Plea of Former Conviction.**

Where defendant was convicted of child desertion and appealed therefrom, which appeal is now pending, and thereafter another complaint was filed against him for the same offense, a plea of former conviction was not the proper remedy, and a different course should have been pursued, and there was no error in striking out this plea. Following Dupree v. State, 56 Texas Crim. Rep., 562, and other cases.

**2.—Same—Insufficiency of the Evidence—Requested Charge—Faith Home.**

Where the evidence showed that the alleged children were placed in a Faith Home under Jewish charities, etc., the court should have permitted a requested charge that if the children were placed in such home during the year 1918, at the instance of their mother, and the Jewish charities, and that after being so placed they had the right to remain there and be maintained in said home until they were each fourteen years of age, the defendant should be acquitted under the facts in the instant case, and the refusal of such requested charge was reversible error.

**3.—Same—Wilful Desertion—Insufficiency of the Evidence.**

It is exceedingly doubtful in the instant case if the proof measures up to the requirement that there was a wilful failure by the defendant to support his said children. Following Irving v. State, 166 S. W. Rep., 1166.

Appeal from the County Court of Harris.  Tried below before the Honorable Murray B. Jones.

Appeal from a conviction of child desertion; penalty, a fine of $100, and six months confinement in the county jail.

The opinion states the case.

*H. E. Dawes,* and *Stevens & Stevens,* for appellant.—Cited: Reid v. State, 229 S. W. Rep., 324; Bobo v. State, 235 id., 878; and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court at law of Harris County, Texas, of the offense of child desertion, and his punishment fixed at a fine of $100 and six months confinement in the county jail.

On February 15, 1922, appellant was convicted of deserting his children. From this judgment he appealed and the appeal is now pending so far as we are informed. On March 2, 1922 another complaint was filed against him for the same offense. This complaint is the basis of the prosecution in the instant case. The charge laid was the desertion of the same children. When the instant case was called for trial appellant presented a plea of former conviction based on the facts we have above stated and alleging that he had already been convicted for the same transaction and offense for which he was now being prosecuted. We do not consider or discuss the various bills of exception and the objections raised to the different phases of this question as presented in the record before us, for the reason that a conviction appealed from and the appeal pending at the time of a subsequent prosecution and trial, will not support a plea of former conviction however just and pertinent the plea otherwise. Dupree v. State, 56 Texas Crim. Rep., 562; Harvey v. State, 57 Texas Crim. Rep., 5; Bosley v. State, 69 Texas Crim. Rep., 100, 153 S. W. Rep., 878; Phillips v. State, 73 Texas Crim. Rep., 627, 164 S. W. Rep., 1004. It is indicated in these authorities that in such case one desiring to avail himself of a prior conviction as a bar to the instant prosecution should pursue a different course from the filing of a plea of former conviction when an appeal is pending.

Appellant is a Jew, the father of seven children; the oldest, a girl self-supporting, lived in Virginia; three boys who lived with their father; two girls, eleven and thirteen, being the children alleged to be deserted in this prosecution; the youngest child, which is shown to be with its mother in Baltimore, Maryland. Appellant's business was that of a peddler, a mender and vender of old watches, clocks, etc. The family seems to have been broken up in 1918. The record discloses that at that time the mother went with the president of the Jewish United Charities, to an institution known in this record as the Faith Home, and there placed the three youngest girls of the family. The terms, agreements and understandings that formed this arrangement, do not appear in the record. Appellant's attitude in and toward said arrangement is not shown. The mother then went to Baltimore, Maryland, where she now is. There appears little dispute over any of the facts contained in the record. Some time after going to Baltimore the mother desired that the smallest girl be sent to her, but the authorities of the Faith Home declined to turn said child over to appellant for any purpose until the mother herself

wrote them a letter authorizing them to do so. The two children in question here, alleged to have been deserted by appellant, have been in the Faith Home continuously from 1918. That they were well fed, clothed and taught while there, is proven and not denied. It was in evidence that the Jewish United Charities was a large contributor to said Home. Appellant's ability to support his family, and especially the two little girls in the Faith Home, was not shown by the State. His own testimony was that he lived in a rented three room house with his three minor sons, two of whom worked, and the other of whom went to school, and that he had no means to employ a housekeeper to take care of the house and the said two little girls. He testified that he did the cooking for himself and the boys. He also swore that he had tried to send his wife $75 per month since she had been away, and that this took all he and the boys could spare from their own living. The authorities of the Faith Home said that when children were placed with them they kept them until they were twelve or fourteen years of age. Both of appellant's said daughters were under that age at the time this prosecution was begun. We are of opinion that this is a sufficient statement of the facts.

A special charge was asked by the appellant as follows:

"If you believe from the evidence that the children were placed in the Faith Home during the year 1918 at the instance of their mother, and the Jewish Charities, and that after being so placed in the same they had the right to remain there and be maintained in said Faith Home until they were each fourteen years of age, you will acquit the defendant."

This was refused. We believe same should have been given. During coverture the mother has equal control of minor children with the father. If appellant's wife had made an arrangement satisfactory to the parties with an institution able to feed, clothe and educate these children, the effect of which was that they were to so keep said children until they reached the age of fourteen years, and it be made to appear that said institution still had them at the time this prosecution was instituted, and that they were being well fed, clothed and taught pursuant to such arrangement, we fail to see how appellant could be successfully charged with wilful failure to feed and clothe his said children. The evil aimed at by this law is an actual and not a possible condition; an existng and not a threatened abandonment; a real and not an imaginary desertion. If the jury believed from the facts that under the agreement reached at the time they were placed in the Faith Home, these children had the right to remain there until they were fourteen years old, and that time had not yet been reached, and they were then being well fed, clothed and taught, and that this condition had existed for the two years prior to the beginning of this prosecution, we do not believe appellant should be held guilty of a wilful desertion and abandonment of his

children. This would not be analogous to a case where one abandoned his destitute children and failed and refused to care and provide for them, and thereafter they were rescued from such condition of want by charitable individuals or institutions. In a case such as last instanced the legal foundation of this crime,—the wilful desertion by the accused,—would obtain and continue till he removed it by his acts.

We are exceedingly doubtful in this case if the proof measures up to the requirement that there be a wilful failure to support. In Irving v. State, 73 Texas Crim. Rep., 615, 166 S. W. Rep., 1166, the late Judge Davidson states that this statute carries with it the idea of wilfulness and is not intended to mean that because a man is unfortunate in not having money to support his wife, that therefore he should be subject to criminal prosecution. It is there announced that this law carries with it as a distinct basic proposition that such desertion must be wilful and without justification. In view of the fact that this appellant testified without contradiction that he sent to his wife all the money he could spare above that which was necessary to take care of himself and his sons, and the further fact that he was in constant communication with the two children alleged to have been deserted by him, and knew their condition and that they were being well fed and cared for, it can hardly be said that his failure to pay to such institution money for their support was without justification and was wilful desertion. It might be argued with some plausibility that he should have divided the money made by him and have contributed only a portion of what he could spare, to his wife, and the other portion to these children. This sounds equitable but does not remove from this record the fact that he knew by observation and contact that these children were being well cared for by the agency with which his wife had placed them, and that the testimony without dispute showed that he was sending to the wife and the little child all the money that he could spare.

It may be observed that appellant belongs to a race whose care for their children is proverbial. The fact that he visited them frequently appears several times in the record; in fact his visits were so frequent that the authorities forbade him coming to see them any more. The record also shows when notified that the children could not be kept longer at the Faith Home, that he went to the authorities of said institution and offered them $100 to keep the children longer, and that upon their refusal he went to see a Mrs. Taub, a Jewish woman, and tried to get her to agree to take them. We have gone through this record with a great deal of care and much concern, for we dislike to reverse cases for lack of evidence. It may be that when these children arrive at the age when they can no longer be kept in said Home and are put back upon their father's care, it will be demonstrated that he is unwilling to take care of them. It may be that the proof will be ample to show a wilful abandonment and desertion

of said children and that they may be in destitute and necessitous circumstances, but so long as said children are where they were placed by their mother, and the record is bare of any showing that the terms of the arrangement then made called upon appellant to further contribute to the support and care of said children; or until the record makes it appear that without his contribution of support, care and provision the children are in destitute and necessitous circumstances, we would not feel inclined to affirm a conviction.

Believing that the special charge should have been given, and that the evidence as same appears in this record fails to satisfy the dispassionate mind that there was any desertion of his children, which was wilful and without justification on the part of appellant, the judgment will be set aside and the cause reversed and remanded.

*Reversed and remanded.*